United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-40096

DOW CHEMICAL CO.,

Plaintiff-Appellant-Cross-Appellee,

versus

LOCAL NO. 564, INTERNATIONAL UNION OF OPERATING ENGINEERS,

Defendant-Appellee-Cross-Appellant.

Appeals from the United States District Court
for the Southern District of Texas, Galveston

(G-02-CV-462)

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant-Cross-Appellee Dow Chemical Co. ("Dow") seeks reversal of certain portions of an arbitration award that granted the reinstated grievants performance awards, vacation pay, and 401(k) benefits, all of which the district court affirmed at summary judgment. Dow argues that the court erred in finding the arbitration panel did not exceed its authority under the collective

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

bargaining agreement ("CBA"). Defendant-Appellee-Cross-Appellant Local No. 564, International Union of Operating Engineers (the "Union"), to which the reinstated grievants belong, cross-appeals the district court's summary judgment vacatur of the arbitration award relating to one particular grievant, Freddie Bonner ("Bonner"). The Union argues that the district court erred in finding Bonner's discharge warranted under his October 1997 last chance agreement ("LCA"). Because the district court did not err either in affirming the back benefits awarded by the arbitration panel to all grievants except Bonner or in vacating the arbitration award as to Bonner, we AFFIRM the decision below.

## BACKGROUND

On May 15, 2000, Dow took a "snapshot" of its email server. Throughout June and July 2000, Dow conducted an investigation which uncovered that over 250 employees had sent, received, and/or saved pornographic, violent, and otherwise non-work-related emails. Dow then rated each employee's email behavior on certain criteria, including the category of material and what was done with it; in August 2000 Dow discharged 20 employees for violating its email policy. Twelve of those discharged employees are represented by the Union under its CBA with Dow. The Union filed grievances on behalf of them and demanded arbitration of its claims pursuant to the CBA's dispute resolution provisions. All the grievances were heard in a single hearing by a panel of three arbitrators during

2

the week of January 14, 2002.

The issue presented to the arbitrators was framed as whether Dow violated the CBA when it terminated the 12 Union-represented employees, and if it had, what remedy was appropriate. The panel handed down its written decision on April 1, 2002. It applied the general standard of "just cause" and found that although the grievants had engaged in "sending garbage through Company email," Dow did not have just cause to terminate them because other employees in similar situations had been treated less severely and because Dow had not considered any mitigating factors, such as the grievants' tenure and clean records. The panel also took into account Dow's inadequate training on its unclear email policy and that many of the grievants' supervisors were also misusing email. Thus, it found Dow violated the CBA by terminating the grievants and converted their terminations into 18-month disciplinary suspensions. The panel stated no "back pay" was to be given, but that the reinstated grievants "are entitled to seniority rights and benefits as if they had never been discharged."

After the panel issued its decision, Dow moved that it reconsider Bonner's reinstatement in light of the three-year probation period outlined in his October 21, 1997, LCA, which had been entered into partly due to his prior involvement with sexual materials in the workplace. In an April 8, 2002, clarification, the panel affirmed its decision as to Bonner, stating it "did not invoke last chance penalties on the Grievants" and restored all of

them to the "status quo ante before these terminations."  Both Dow and the Union also sought clarification of that part of the initial award relating to "benefits."  On June 10, 2002, the panel issued a second clarification, which specified that the grievants were to receive (1) "the same Performance Award for 2002 as other comparably classified employees without discipline for the year," (2) "vacation time and pay or vacation allowance for 2000, 2001, and 2002," and (3) "the sum of the maximum [401(k)] amount he/she, personally, would have been allowed to contribute for the time period that he/she was off work [and] whatever matching Company funds that were allowed during his/her time off work."  The panel also clarified that Bonner was to be returned to the position of "Special Relief Operator."

Dow then filed a complaint in the district court, asking that the court set aside all the benefits-related portions of the award and subsequent clarifications, but not challenging the reinstatement of the grievants, except Bonner.  The Union answered and cross-claimed, asking that the district court enforce the panel's entire award.  Both parties moved for summary judgment. The district court partially granted each motion; in essence, it affirmed the panel's award as to the back benefits for 11 of the reinstated grievants but vacated that part of the award which reinstated and conferred benefits on Bonner.  This appeal by Dow and cross-appeal by the Union timely followed.

4

**DISCUSSION**

Dow and the Union are correct in asserting that in an appeal from a grant of summary judgment in a suit to vacate an arbitration award, appellate courts review the district court's ruling de novo. *Weber Aircraft v. Gen. Warehousemen and Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001) (citations omitted). Under Fed. R. Civ. P. 56(c), summary judgment is proper if, viewing the facts in the light most favorable to the nonmovant, the movant shows there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 255 (1986).

Appellate courts apply a highly deferential standard when reviewing arbitration awards. *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003). In fact, "[j]udicial review of a labor-arbitration decision pursuant to [a CBA] is very limited." *Id.* (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) (alteration in original). Courts may not review the arbitration decision on the merits, even where a party alleges factual errors or misinterpretation of law. *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003); *see also Columbian Chems.*, 331 F.3d at 494. Where there is a CBA governed by the Labor Management Relations Act of 1947, as here, courts do not overrule the arbitrator's decision simply because they might interpret the contract differently.

5

*Columbian Chems.*, 331 F.3d at 495 (citing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

Though the interpretation of a CBA as a contract is a question for the panel, *see* *Steelworkers*, 363 U.S. at 598-99, arbitrators cannot exceed their scope of authority under the governing CBA. *Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 182 (5th Cir. 1995). Still, courts must affirm an arbitration award where such decision "draws its essence" from the CBA and where the arbitrator is not fashioning "his own brand of industrial justice." *Weber*, 253 F.3d at 824 (citations omitted). That is, the award stands "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also* *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989) (noting arbitrators can look beyond the written CBA "if the instrument is ambiguous or silent upon a precise question").

The "essence" test is met when the award has "a basis that is at least rationally inferable . . . from the letter or purpose" of the CBA. *Local Union No. 66*, 71 F.3d at 183 (citation omitted). The "essence" standard is interpreted expansively, rather than restrictively, to uphold awards. *Int'l Ass'n of Machinists &*

6

*Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir. 1976).  However, the "essence" test is not met – and courts can set aside awards – when the arbitrator acts contrary to express contractual provisions, thus exceeding her contractual mandate.  *See* **Delta Queen**, 889 F.2d at 602, 604; *see also* **Steelworkers**, 363 U.S. at 597 (noting courts must refuse an award that "manifests an infidelity" to the essence standard).

**Whether the district court erred in finding that the panel did not exceed its authority under the CBA in awarding the grievants certain back benefits.**

Here, Article XIX, Arbitration Procedure, of the CBA provided that:

> [T]he case will be presented to the impartial arbitrator on the earliest possible date and his/her decision will be final and binding upon both parties to this agreement.  *Such decision shall be within the scope and terms of this agreement and shall not change any of its terms or conditions.*

(Emphasis added).  The agreement governing the instant arbitration also noted that "the authority of the arbitrators and all other aspects of the hearing will be governed by the collective bargaining agreement."

Dow argues that the panel overstepped its authority under the CBA by awarding the grievants 2002 performance awards, vacation pay for 2001, and 401(k) benefits because those benefits conflicted with the express language of the CBA.  Exhibit E of the CBA states: "Employees who during the year are placed on disciplinary probation as a result of an Employee Review Board decision, or who receive

7

disciplinary time off will be excluded from that year's performance award." Dow argues this plain language means that because the grievants received disciplinary time off in 2002 due to the panel's imposed 18-month suspension (which indeed spanned the beginning of 2002), they were all ineligible to receive "that year's performance award."

Dow similarly argues that Article XI, Vacations, of the CBA only permits vacation benefits for employees who have "drawn pay" during that year. Therefore, because the grievants were placed on disciplinary suspension for all of 2001, they drew no 2001 pay and would not have been eligible for any 2001 vacation time. Dow also claims that vacation under the CBA usually equals paid time off; vacation equals "pay" only in certain circumstances, such as injury or illness, retirement, being laid off, or quitting with notice.[1]

Finally, Dow contends that because the CBA nowhere provides for 401(k) benefits at all, the panel could not have been drawing from the essence of the CBA in fashioning that award. Dow also argues that under the clear terms of its 401(k) plan, Article 3, Contributions, the grievants are ineligible to contribute to their 401(k) plans because contributions can only come from a Union

---

[1] Dow also claims the district court entirely misconstrued the vacation issue. Instead of whether any vacation pay or time was proper for 2001, the district court suggested that the issue was whether 2001 time could be accrued and then applied to 2002 vacation. Upon review, Dow seems correct, but this makes little difference to our determination that the district court did not err in finding the panel's vacation award for 2001 meets the "essence" test.

8

employee's pretax or after-tax "Hourly Wage." Because the grievants did not earn any wages during their suspension, to allow them to contribute and to make Dow match contributions would be prohibited by the 401(k) plan and would violate federal public policy under the Internal Revenue Code and Treasury Regulations.

The Union's consistent response to all of Dow's challenges to the award is that arbitrators must be given flexibility to fashion remedies when they are "commissioned to interpret and apply the collective bargaining agreement" because "[t]he draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Steelworkers*, 363 U.S. at 597. The Union urges that courts must adhere to a very limited and deferential review of awards in order to further the federal policy of settling labor disputes through arbitration. *See id.* at 596.

Thus, the Union argues, because the CBA had no express provision detailing the exact types of performance award remedies that wrongfully discharged employees reinstated through arbitration would be eligible for,[2] the arbitrators were doing what the CBA expressly authorized them to do when they awarded the grievants

---

[2] Dow claims that these particular grievants could not be treated in a manner "above and beyond what any other employees returning to work under similar circumstances would have been permitted to receive under the CBA." However, the CBA does not provide the proper remedies for employees "similar" to the grievants. It arguably provides for what happens when Dow itself places employees on disciplinary probation or time off, not when an arbitration panel decides to downgrade Dow's wrongful discharge of certain employees to a suspension.

performance awards for 2002 – making a "final and binding" decision that did not "change any of [the CBA's] terms or conditions."

The Union similarly claims that because the CBA contained no express provision to confer vacation benefits on employees reinstated through arbitration, the panel acted within its authority to grant the grievants the time or pay "they otherwise would have received had they worked the entire time since August, 2000, for each year." Thus, for the purpose of vacation benefits, the grievants were to be treated as if they had drawn pay in 2001.

Finally, the Union asserts that because the CBA specified no available 401(k) remedies for this situation, the panel was authorized to fashion a proper remedy. While the Union acknowledges the CBA makes no mention of the Dow 401(k) plan, it argues that the panel's source of authority while fashioning remedies does not merely stem from the literal words of the CBA alone. The Union also dismisses Dow's public policy arguments, noting that the panel itself recognized the contributions might not be eligible under Dow's 401(k) plan. This is precisely why the panel alternatively allowed for a lump sum payment for the grievants' "private investment or other use."

As the district court correctly pointed out, it need not be privy to the panel's precise rationale for awarding the grievants only a 2002 performance award. Courts must only satisfy themselves that the award draws its essence from the CBA and is not contrary to any express contractual provision. The CBA's performance award

provision, as the district court found, could be construed as ambiguous in that it could be interpreted to bar performance awards either (1) in each year an employee is away from work due to disciplinary probation or time off or (2) just "during the year" an employee is first placed on disciplinary probation or time off.[3] In other words, the panel drew from the essence of the CBA to fashion an equitable remedy in these circumstances for these grievants who, granted, wrongly sent inappropriate email but also whom Dow wrongly terminated.

The district court was also correct in finding that the panel's decision to award vacation pay or time for 2001 was an equitable determination drawn in essence from the "purpose" of the CBA. It did not contradict any express provision because there was no prohibition against granting retroactive vacation time or pay to reinstated employees. The only express prohibitions, as the Union

---

[3] Dow places much emphasis on the fact that the panel made no reference to any ambiguous language in the CBA when awarding the 2002 performance awards. Again, though, the district court is only to determine whether the panel was basing its award on "an arguable construction and application of the CBA." *Weber*, 253 F.3d at 824. Arguably, the panel either found the performance award language in the CBA ambiguous or that it could not be literally applied to the situation of these specific grievants. Either explanation would draw its essence from the CBA. Indeed, the latter explanation perhaps suggests why the panel in its second clarification repeatedly stated, "The remedy provided is not necessarily an interpretation of rights under the Collective Bargaining Agreement." Dow claims this means the panel was expressly disavowing making an interpretation under the CBA. However, this phrase could indicate that the panel believed it could not literally apply the CBA's language to the grievants' situation, so rather it inferred a remedy from the "purpose" (not the "letter") of the CBA.

11

points out, apply to employees who quit without notice or who are discharged for cause and are not applicable here.

Finally, the district court found it difficult to swallow that if, instead of an email violation, a Union member had been wrongfully terminated based on race or gender discrimination, the panel would exceed its authority under the CBA by allowing for an appropriate 401(k)-type lump sum benefit, where the CBA was silent as to such remedy. This nonliteral reading of the CBA makes sense; otherwise, employees reinstated through arbitration would be entitled to virtually no benefits for the time they were under a wrongful discharge under the literal provisions of the instant CBA. The district court noted that an arbitrator's award of a remedy should be upheld even where the instant CBA neither permits nor precludes such a remedy. *See **Executone Info. Sys., Inc. v. Davis***, 26 F.3d 1314, 1325 (5th Cir. 1994) (noting a previous decision by the Fifth Circuit that allowed an award of back pay where the underlying CBA made no mention at all of such remedy). This is the case here; the panel drew from the "purpose" of the CBA to award 401(k)-type benefits where the CBA was silent as to such remedy.

What the arbitrators give or do not give as an explanation for their award does not matter. "This Court looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." ***Executone***, 26 F.3d at 1325 (citation omitted). Here, we find the district court was

12

correct in determining that the arbitration panel did not exceed its authority in awarding back benefits to all the grievants except Bonner.

**Whether the district court erred in overturning the reinstatement of and benefits awarded to grievant Bonner.**

In this Circuit, an LCA is considered to form a firm contract – it functions as "a supplement to the CBA and is just as binding upon the arbitrator." *Int'l Union of Operating Eng'rs, Local 351 v. Cooper Natural Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999). When an arbitration panel ignores the explicit terms of an LCA, its decision as to that employee is "owed no deference" and "must be closely scrutinized." *Cooper*, 163 F.3d at 919.

There is no dispute that Bonner had entered into an LCA with Dow on October 21, 1997, and it appears that his three-year probation period was to start on his first day back at work, which was November 10, 1997. Bonner's October 1997 LCA clearly stated that "failure to meet any job performance criteria, requirements, policies, and/or expectations will result in [his] termination" and that "any future performance problems . . . will result in [his] termination." It also explicitly listed one of Bonner's performance issues as "possessing sexually oriented materials on Dow property" in violation of Dow policy. Thus, the district court correctly disregarded the Union's argument that Bonner's email violation (forwarding a sexually explicit cartoon) could not be considered a "performance problem." However, the Union also argues

13

that because Dow entered into another LCA with Bonner (for an improper seed resin transfer) on June 16, 2000, after the email investigation had started in early June 2000, the June 2000 LCA took into account and thus superseded or waived the October 1997 LCA. Finally, the Union relies on **Weber**, 253 F.3d at 824, for the proposition that where a CBA is ambiguous as to "just cause," arbitrators act within their authority if they impose a punishment (here, suspension) within the range contemplated by the CBA.

Dow contends because the October 1997 LCA was in effect until Bonner's three-year probation period ended in November 2000, it was free to terminate Bonner in August 2000 for his May 15, 2000, email violation uncovered in the June/July 2000 investigation. It argues the June 2000 LCA had no effect on the previous LCA because the email investigation had just started and was still ongoing. Thus, it was not clear that Bonner had violated his October 1997 LCA at the time. Moreover, Bonner's June 2000 LCA seemed to be a concession on Dow's part that this particular job performance error would not activate his October 1997 LCA, in light of Bonner's "improved" behavior, but also acknowledged that Bonner still "currently ha[s] a last chance letter in [his] file." In essence, Dow claims the October 1997 LCA acts to supplement the CBA; thus, Bonner's reinstatement is expressly contrary to that LCA and the CBA.

Dow puts forth the stronger argument. Because the June 2000

14

LCA referenced the October 1997 LCA and considered it still in effect, Dow could properly rely on the October 1997 LCA to terminate Bonner for possessing and sending improper sexually oriented email. *Weber* would only control were there not an LCA as to Bonner in place (and did control as to the 11 grievants not covered by an LCA). Because the panel ignored the express terms of the binding October 1997 LCA, its decision as to Bonner is not owed any deference and must be carefully scrutinized. It fails such scrutiny. Therefore, the district court properly took the October 1997 LCA into account when it vacated the panel's arbitration award as to Bonner.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we AFFIRM the decision of the court below upholding the arbitration award as to all grievants except Bonner and vacating the arbitration award as to Bonner.

AFFIRMED.

15