**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 00-40284

---

WEBER AIRCRAFT INC,

Plaintiff-Counter Defendant-Appellee,

VERSUS

GENERAL WAREHOUSEMEN AND HELPERS UNION LOCAL 767,

Defendant-Counter Claimant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division

---

June 7, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Weber Aircraft, Inc. ("Weber") brought this action against General Warehousemen and Helpers Union Local 767 ("the Union"), seeking to vacate an arbitration award in favor of the Union. The district court rendered summary judgment in favor of Weber, vacating the arbitration award. The Union appealed. We reverse the judgment of the district court and reinstate the arbitration award.

I.

Weber and the Union entered into a collective bargaining agreement ("CBA") with arbitration provisions.  The CBA reserves to Weber "the right to . . . suspend, and/or discharge for just cause."  "Just cause" is not defined in the CBA, though the company rules and regulations are incorporated into the CBA and violations of the rules "could be sufficient grounds for disciplinary action, ranging from reprimand to immediate discharge depending on the severity."  "Category 1" violations are subject to "Immediate Suspension for investigation/Possible Discharge."  Sexual harassment is a Category 1 violation.  A decision to suspend or discharge an employee is subject to the grievance and arbitration provisions of the CBA.  Under those provisions, to find in favor of Weber's suspension or discharge of an employee, the arbitrator has to find that Weber had just cause for the particular disciplinary action taken.

Roy Sewell had been employed by Weber as a lead-man for more than twenty-five years and was covered by the CBA.  In April 1998, Sewell was accused of sexually harassing a female co-worker, and was suspended pending an investigation of the accusation.  During Weber's investigation, two additional female co-workers accused Sewell of sexually harassing them.  Based on its investigation, Weber discharged Sewell in May 1998.  The Union filed a grievance seeking Sewell's reinstatement with backpay, and the matter was

presented to an arbitrator to determine whether Sewell was "discharged for just cause." The arbitrator found that Sewell engaged in conduct constituting Category 1 sexual harassment. However, the arbitrator found that "the discipline granted [Sewell] was excessive, given the facts of the case and [Sewell's] prior record of service."[1] The arbitrator found that Weber did not have just cause to discharge Sewell and ordered that he be reinstated without backpay for the eleven-month period between his discharge and the arbitrator's award, effectively commuting Sewell's discipline to an eleven-month suspension without pay. Weber filed suit in district court and successfully moved for summary judgment vacating the arbitration award. The Union appealed.

The district court's assigned reasons for rendering summary judgment in favor of Weber were that (1) the arbitration award exceeded the scope of the arbitrator's authority under the CBA, and (2) the reinstatement of Sewell (although without backpay), despite finding that he had sexually harassed female employees, was contrary to the public policy against sexual harassment in the workplace. Because we conclude that the arbitration award is

---

[1] The facts that the arbitrator found to mitigate Sewell's sexual harassment conduct were that (1) two alleged incidents occurred prior to the inclusion of sexual harassment as a Category 1 offense and were never reported to the Company prior to its investigation; (2) evidence was insufficient to prove that the harassment resulted in the victim being "truly threatened by [Sewell's] actions, to the point that [Sewell] should be permanently removed from the workplace"; and (3) Sewell "ha[d] a record of long standing and valuable service to the Company and his only prior discipline was reversed in arbitration."

3

congruous with the CBA and public policy, we must reverse.

                                   B.


     In an appeal from a grant of summary judgment in a suit to vacate an arbitration award, we review the district court's ruling de novo.  Six Flags Over Texas, Inc. v. Int'l Bhd. of Elec. Workers Local No. 116, 143 F.3d 213, 214 (5th Cir. 1998) (citing Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66, 71 F.3d 179, 181 (5th Cir. 1995)).  Judicial review of arbitration awards is extremely limited.  As long as the arbitrator's decision "draws its essence from the collective bargaining agreement" and the arbitrator is not fashioning "his own brand of industrial justice," the award cannot be set aside. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  Accordingly, we must affirm the award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  Misco, 484 U.S. at 38.  Thus, if we determine that the arbitrator has acted within the ambit of his authority as set by an arguable construction and application of the CBA, we have no authority to reconsider the merits of the arbitration award, even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA.  Six Flags, 143 F.3d at 214

(citing Misco, 484 U.S. at 36).

C.

In the present case, the arbitrator did not act beyond the ambit of his authority under the CBA by determining that, while there was not just cause to fire Sewell, there was just cause to suspend him without backpay for some eleven months. The CBA provides that a Category 1 violation justifies "Immediate Suspension for Investigation/Possible Discharge." The arbitrator interpreted the CBA as authorizing a range of punishment for Category 1 violations; discharge being the appropriate sanction for the more serious violations, and suspension the suitable penalty for less aggravated infractions. This interpretation is plausible because the CBA provides that a Category 1 violation calls for suspension and possible, not certain, discharge; and because the CBA does not establish a fixed definition of "just cause," plainly indicating that the standard varies with the level of punishment. Thus, the arbitrator's determination that a particular Category 1 violation may be sanctioned by a suspension without pay arguably "draw[s] its essence from the contract and [does not] simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38.

Weber argues that this circuit's decision in E.I. DuPont de Nemours & Company v. Local 900 of the International Chemical

<u>Workers Union</u>, 968 F.2d 456 (5th Cir. 1992), requires that the arbitrator's finding that Sewell committed a Category 1 violation compels him to conclude that there was just cause for the employee's discharge. The narrowly drawn CBA in that case, however, did not even arguably permit the arbitrator's pro-employee construction or application of the contract or action thereunder.

In <u>DuPont</u>, this court affirmed the district court's vacating of an arbitration award that reinstated two employees because the CBA in that case did not permit the arbitrator to construe or apply the contract to authorize a sanction other than discharge. <u>Id.</u> at 459. The effect of the characterization of the employees' conduct as "[u]nquestionably, . . . a discharge offense" under that CBA was emphasized by the opinion's heavy reliance on the reasoning in <u>Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Association</u>. <u>Id.</u> at 458-59 (citing <u>Delta Queen</u>, 889 F.2d 599 (5th Cir. 1989)). In <u>Delta Queen</u>, the arbitrator found that the discharged riverpilot had been "grossly careless." 889 F.2d at 601. The CBA in that case expressly designated "carelessness" as a "proper cause" for discharge. <u>Id.</u> (noting that the CBA provided that "[n]o Officer shall be discharged except for proper cause such as, but not limited to, inefficiency, insubordination, carelessness, or disregard for the rules of the Company"). Despite finding that the riverpilot had been guilty of gross carelessness, however, the arbitrator in <u>Delta Queen</u> awarded the pilot reinstatement, restoration of full seniority, and payment of most

6

of his backpay.  Id.  Because  the CBA limited the arbitrator's jurisdiction to determining whether proper cause existed for discharge, and  the CBA expressly stipulated that "carelessness" was a "proper cause" for discharge,  this court in Delta Queen concluded that the arbitrator had exceeded the scope of his authority established by the CBA.  Id. at 603-04.  By finding that a violation had occurred that was expressly designated by the CBA as a "proper cause" for discharge, the arbitrator had necessarily found that there was proper cause for discharge, and the parties had not authorized the arbitrator to vary from the sanction of discharge in the event of such a finding.  Id. at 603.  In relying on Delta Queen, the DuPont court reaffirmed that, when authority to impose a lesser alternative sanction cannot be arguably inferred from a CBA, the arbitrator may not exceed the scope of the CBA to fashion one.

Neither DuPont nor Delta Queen is determinative of our decision in the present case.  The restrictive CBA provisions in those cases, viz., the strict definition of "proper cause" in Delta Queen, and the exclusion of a lesser sanction than discharge in DuPont, prevented the arbitrators from adopting arguable constructions or applications more favorable to the employees.  Of course, we are not empowered to reverse the arbitrator's award simply because the arbitrator's arguable construction or application of the CBA may deviate from that which this court, if authorized, would adopt as its own construction of the CBA; or

7

because of superficial differences in results between the court cases. So long as the arbitrator arguably construed or applied the CBA at issue and acted within the scope of his authority thereunder, we must affirm. See Eastern Assoc. Coal Corp., 121 S. Ct. at 466. After all, each case must turn on its own particular facts, CBA provisions, arguable constructions or applications thereof, and arbitral actions. We are bound to decide only after careful analysis of these particular elements in the present case and according to the legal principles controlling judicial review of arbitration awards; we are not free to decide the present case by analogy or distinction drawn upon previous judicial opinions according to common law methodology.

## II.

Next, we turn to the question of whether the arbitration award was against public policy. Well-established federal labor law favors the protection of an arbitration scheme of "private settlement of labor disputes without the intervention of government." Misco, 484 U.S. at 37. There is, however, a "legal exception that makes unenforceable 'a collective bargaining agreement that is contrary to public policy.'" Eastern Assoc. Coal Corp., 121 S. Ct. at 467 (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)). "The [Supreme] Court has made clear that any such public policy must be explicit, well defined,

and dominant." Id. (omitting internal quotations). "It must be 'ascertained "by reference to the laws and legal precedents and not from general consideration of supposed public interests."'" Id. (quoting W.R. Grace & Co., 461 U.S. at 766) (in turn quoting Muschany v. United States, 324 U.S. 49, 66 (1945)) (citing Misco, 484 U.S. at 43). The question to be answered is not whether Sewell's sexual harassment of female co-workers itself violates public policy, but whether the CBA, which (as interpreted by the arbitrator) provides for his reinstatement, does so. See id. "To put the question more specifically, does a [collective bargaining] agreement to reinstate [a discharged employee] with specified conditions . . . run contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests?" Id. (citing Misco, 484 U.S. at 43.)

The Supreme Court, in Eastern Associated Coal Corp. v. Mine Workers, "agree[d], in principle, that courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law." 121 S. Ct. at 467. "Nevertheless, the public policy exception is narrow and must satisfy the principles set forth in W.R. Grace and Misco."[2] Id.; see also id. at 470 (Scalia, J., concurring) ("It is

---

[2] In his concurring opinion, Justice Scalia characterized this "narrow" exception as "a giant 'Do Not Enter' sign." Eastern Assoc. Coal Corp., 121 S. Ct. at 470 (Scalia, J., concurring).

9

hard to imagine how an arbitration award could violate a public policy, identified in this fashion, without actually conflicting with positive law.").

Applying the foregoing precepts, we, like the Supreme Court in Eastern Associated Coal Corp., "cannot find in the [laws], the regulations, or any other law or legal precedent an 'explicit,' 'well defined,' 'dominant' public policy to which the arbitrator's decision 'runs contrary.'" Id. at 469 (quoting Misco, 484 U.S. at 43; W.R. Grace, 461 U.S. at 766).[3]   We conclude,

---

[3] Our conclusion is in accord with the decisions of the other Circuits that have addressed the issue of whether there is a clear public policy against reinstating sexual harassers.  See Westvaco Corp. v. United Paperworkers Int'l Union, 171 F.3d 971, 977 (4th Cir. 1999); Communication Workers v. S.E. Elec. Coop., 882 F.2d 467 (10th Cir. 1989); Chrysler Motors Corp. v. Allied Indus. Workers, 959 F.2d 685 (7th Cir. 1992).

In Westvaco Corp. v. United Paperworkers International Union, the Fourth Circuit noted that "while it is certainly true that there is a public policy against sexual harassment, . . . [t]here is no public policy that every harasser must be fired.  Instead, a company must 'exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior.'" 171 F.3d at 977 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)). The Fourth Circuit reasoned that, "because misconduct often differs in degree, there is no universal punishment that fits every case." Id.  Decisions in the Seventh and Tenth circuits support the conclusion of the Westvaco court.  See Chrysler Motors Corp., 959 F.2d at 687-88 (finding that a less severe punishment than discharge was an appropriate alternative remedy for a sexual harasser and did not violate public policy); S.E. Elec. Coop., 882 F.2d at 469 (examining an arbitrator's reinstatement award and finding that it did not violate public policy against sexual harassment).

Contrary to Weber's argument, the Second and Third circuits have not squarely addressed the issue.  In Newsday, Inc. v. Long Island Typographical Union, 915 F.2d 840 (2d Cir. 1990), the Second Circuit determined that there is a clear public policy in favor of eliminating sexual harassment from the workplace.  However, the court came to no conclusion as to whether there is a clear public

10

therefore, that Weber's public policy claim must be rejected.


Conclusion


Accordingly, the judgment of the district court is REVERSED, and the arbitrator's award is REINSTATED.

---

policy against reinstatement of sexual harassers who have been otherwise sanctioned for their behavior. Rather, in light of the fact that the employee in that case had been disciplined for previous acts of sexual harassment and informed that further sexual harassment would lead to his discharge, the Second Circuit found that the public policy in favor of eliminating sexual harassment from the workplace justified vacating the arbitrator's award reinstating the employee in that particular case. See St. Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 47 (2d Cir. 1997) (noting the limited scope of Newsday's holding). In Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436 (3d Cir. 1992), the Third Circuit found that there is a clear public policy in favor of employer sanctions against employees who commit sexual harassment. Id. at 1442. Because the arbitrator there awarded full reinstatement to the employee without determining whether harassment occurred, the court found that the reinstatement violated the public policy in favor of sanctioning sexual harassers. Id. However, the court did not reach the question of whether a clear public policy required discharge as the only appropriate sanction. In fact, the Stroehmann court recognized that when an arbitrator addressed the merits of the sexual harassment claims against the discharged employee and then made the determination that a sanction less severe than discharge was the appropriate remedy, the arbitrator would not violate public policy by reinstating a sexual harasser without backpay. Id. at 1443.

11