JENNIFER WALKER ELROD, Circuit Judge,
dissenting in part:
An employee either is or is not at-will. There is no such thing as somewhat at-will, or as the majority puts it “sufficiently non-at-will.” In fact, the majority’s conclusion brings to mind Miracle Max’s diagnosis that Westley was “mostly dead.” See Princess Bride (20th Century Fox released Sep. 25, 1987).[1] Here, the collective bargaining agreement unreservedly limits DuPont’s ability to fire employees “except for just cause.” The covered employees are not at-will.[2] I respectfully dissent.
An employee, who believes he has been unjustly discharged, shall be allowed ten (10) calendar days, from the date of notification of discharge, in which to register a complaint with the PLANT. A complaint alleging an unjust discharge may be processed under Article VI, Adjustment of Grievances, beginning with the third step; or under Article VII, Arbitration; or both. If it is agreed or determined that an employee has been unjustly discharged, the PLANT will reinstate without loss of seniority and compensate such employee for lost earnings at his regular rate of pay based on his regular work schedule in effect prior to the discharge, provided, however, such period of payment shall not exceed six (6) months.
At-will employment in Texas means the employee may be fired “for good cause, bad cause, or no cause at all.” Montgomery Cnty. Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex.1998). Texas law presumes employment is at-will unless the employer “unequivocally indicated] its intent to be bound not to terminate the employment except under clearly specified circumstances.” Midland Judicial Dish Cmty. Supervision & Corr. Dep’t v. Jones, 92 S.W.3d 486, 488 (Tex.2002). It is difficult to conceive of a more unequivocal indication of intent than what DuPont exhibited in the CBA section entitled “Discharge or Disciplinary Suspension,” which states: “The PLANT agrees that no employee will be discharged or given a disciplinary suspension except for just cause.” Indeed, the CBA outlines a detailed grievance procedure whereby fired employees may contest their termination as “an unjust discharge.”[3] This would be nonsensical if DuPont could fire the covered employees for good cause, bad cause, or no cause at all.[4]
*388 In spite of this unambiguous contract, the majority makes an Erie guess that Texas courts would conclude the CBA created an at-will relationship. In doing so, the majority ignores numerous cases where similar CBAs overcame the at-will presumption. For example, Texas courts have held that CBAs that limit discharge to just cause and provide grievance procedures do not create at-will employment. See Fort Worth Transp. Auth. v. Thomas, 303 S.W.3d 850, 858-59 (TexApp. — Fort Worth 2009, pet. denied); Simmons Airlines v. Lagrotte, 50 S.W.3d 748, 751-53 (Tex.App. — Dallas 2001, pet. denied). Fifth Circuit cases are in accord. See, e.g., Weber Aircraft Inc. v. Gen. Warehousemen and Helpers Union, 253 F.3d 821, 823 (5th Cir.2001) (“Under those provisions, to find in favor of Weber’s suspension or discharge of an employee, the arbitrator has to find that Weber had just cause for the particular disciplinary action taken.”); Six Flags Over Tex., Inc. v. Int’l Bhd. of Elec. Workers, 143 F.3d 213, 214-15 (5th Cir.1998) (same); Gulf Coast Indus. Workers Union v. Exxon Co., 70 F.3d 847, 849 (5th Cir.1995) (same); Trahan v. BellSouth Telecomm., Inc., 71 F.3d 876, *1 (5th Cir. 1995) (same).
Nevertheless, the majority believes that the CBA’s generic “evergreen” provision— that the “Agreement shall continue in full force and effect until terminated by either party with at least sixty (60) calendar days’ notice in writing” — somehow renders the covered employment at-will.[5] This is incorrect.
To begin with, the majority relies on a flawed assumption: that DuPont would be free to fire the covered employees for any reason by simply terminating the CBA with its protections. This ignores the fact that even if the CBA were terminated, federal law imposes an obligation on DuPont to maintain the grievance procedures as the status quo until post-contract negotiations reach an impasse[6] — hardly the at-will freedom to fire someone “for good cause, bad cause, or no cause at all.” Brown, 965 S.W.2d at 502. Moreover, similar evergreen provisions are standard in CBAs, and the notice language here simply restates the requirements already imposed by federal law. See Commc’ns Workers of Am. v. Sw. Bell Tel. Co., 713 F.2d 1118, 1122-23 (5th Cir.1983) (noting the federal law requirement that parties must provide sixty days’ notice before terminating a CBA). Not surprisingly, the majority can cite to no case where a CBA with such a standard notice provision only created at-will employment.
*389 Next, the majority cites to a few Texas cases that supposedly answer our Erie question, but those cases are inapposite. Importantly, not one of them dealt with a CBA, and therefore could not overrule the above Texas case law where CBAs overcame the at-will presumption. Rather, these cases involved employment contracts with individuals that expressly allowed the employer to fire the worker for any reason with sufficient notice. For example, in Hussong, the employment contract allowed the employer to fire the employee immediately under certain circumstances or “without cause” if the employer gave thirty days’ notice. Hussong v. Schwan’s Sales Enters., 896 S.W.2d 320, 322 (Tex.App. — Houston [1st Dist.] 1995, no writ). See also Curtis v. Ziff Energy Grp., Ltd., 12 S.W.3d 114, 117 (Tex.App. — Houston [14th Dist.] 1999, no pet.) (finding at-will employment because the contract allowed the employer to terminate the employee’s contract with thirty days’ notice “at any time and for any reason”). By relying on cases with employment contracts with individual employees, the majority misses the distinction between terminating a CBA (after which covered employees continue to work) and terminating an employee (after which that person is fired).[7]
In making the Erie guess, I believe Texas courts would follow the Texas and federal case law where similar CBAs did not create at-will employment. The majority strains inapposite cases to arrive at a strange result: a CBA that expressly limits discharge “except for just cause” actually creates an at-will relationship merely because it includes a boilerplate notice provision that recites the federal law requirements for terminating a CBA. For these reasons, I respectfully dissent in part.

. Inigo Montoya: He's dead. He can't talk. Miracle Max: Whoo-hoo-hoo, look who knows so much. It just so happens that your friend here is only mostly dead. There's a big difference between mostly dead and all dead. Mostly dead is slightly alive. With all dead, well, with all dead there's usually only one thing you can do .... Go through his clothes and look for loose change.

. I agree with the majority that the non-covered employees are at-will and that the summary judgment as to those appellants should be affirmed.

. The “Discharge or Disciplinary Suspension” section provides:

.Other CBA provisions also become inexplicable if covered employees could be fired for any reason. For example, "[d]uring the first nine (9) months of employment a new employee will be subject to demotion, transfer, or termination by the PLANT and such action shall not be subject to the terms of this Agreement.” If all covered employees were at-will, then the CBA would not distinguish the ability *388 to fire new employees within their first nine months.

. Unlike the above just cause protections in the section entitled "Discharge or Disciplinary Suspension,” the evergreen provision appears much later in the CBA under the heading "Scope and Life of Agreement.”

. See Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 543 n. 5, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988) ("If the parties were indeed at an impasse, then the employer’s statutory duty to maintain the status quo during postcontract negotiations ... would end.”); Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 318, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965) ("[W]e hold that an employer violates neither § 8(a)(1) nor § 8(a)(3) when, after a bargaining impasse has been reached, he temporarily shuts down his plant and lays of his employees for the sole purpose of bringing economic pressure to bear in support of his legitimate bargaining position.”); see also United Steelworkers of Am. v. ASARCO, Inc., 970 F.2d 1448, 1452 (5th Cir.1992); Elec. Mach. Co. v. NLRB, 653 F.2d 958, 963 (5th Cir.1981) ("'Impasse' within the meaning of the federal labor laws presupposes a reasonable effort at good faith bargaining which, despite noble intentions, does not conclude in an agreement between the parties.”) (quoting NLRB v. Big Three Indus., Inc., 497 F.2d 43, 48 (5th Cir. 1974)).

. Even DuPont does not argue that the mere act of terminating the CBA would fire the covered employees, merely contending that the CBA's termination would allow DuPont to bargain for a new CBA.