# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 3, 2013

Lyle W. Cayce
Clerk

No. 11-31185

ALBEMARLE CORPORATION,

Plaintiff–Appellee

v.

THE UNITED STEELWORKERS, on behalf of AOWU Local 103,

Defendant–Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before JOLLY, PRADO and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Albemarle Corporation ("Albemarle" or the "Company") terminated two employees for violating the Company's safety protocols. Their union, the United Steel Workers ("USW"), filed a grievance, and Albemarle and USW brought the dispute to arbitration pursuant to their collective bargaining agreement ("CBA"). The arbitrator tempered Albemarle's discharge penalty, ordering the employees reinstated after a lengthy, unpaid suspension. Albemarle filed this action to vacate the arbitrator's award, and USW counterclaimed to enforce the decision. On the parties' cross-motions for summary judgment, the district court rendered judgment in Albemarle's favor, vacating the arbitrator's decision in reliance on

No. 11-31185

our per curiam decision in *E.I. DuPont de Nemours & Co. v. Local 900 of the International Chemical Workers Union, AFL-CIO*, 968 F.2d 456 (5th Cir. 1992). *DuPont* does not control on the facts of this case, and, guided by the considerable deference we must grant arbitrators' decisions, we REVERSE.

## FACTS AND PROCEEDINGS

Albemarle, a chemicals manufacturer, operates a Process Development Center ("PDC") in Baton Rouge, Louisiana. Marcel Collor and Kevin Deville ("Grievants"), the terminated employees, were operators in the Pilot Plant Building of the PDC. PDC employees work with dangerous chemicals, and the Company emphasizes maintaining safe operations at the plant. Albemarle's Emergency Response Manual sets procedures for immediately reporting minor and major spills or releases. A minor incident requires informing a supervisor, while a major event requires alerting security. As the arbitrator determined, the Grievants received "extensive" safety training concerning chemical spills and were "held accountable to immediately report any spill to supervision or security. The means available include the use of a telephone, 2-way radio or pull the alarm."

On March 17, 2009, the Grievants were leaving work in their street clothes after completing a twelve-hour shift. They were the only employees remaining in the Pilot Plant Building. On their way out, they noticed that a liquid was leaking in the Pilot Plant Building's Middle Room, where no employees were assigned to work at the time. The Grievants repeatedly attempted to reach their foreman, Jessie Ourso, by phone to report the incident, but they were unsuccessful. Five minutes later, they arrived at the security guard station near the Pilot Plant Building's exit. They reported the leak to the security guard on duty, and stayed while the guard successfully reached Ourso by radio. Ourso arrived at the scene of the spill, determining that the liquid the Grievants had spotted was glycol. The glycol had leaked from a tank due to the "failure of the

2

gasket on the top flange of the meter." The Company issued no emergency notifications as a result of the incident.

A week later, Albemarle terminated the Grievants for failing promptly and properly to report the spill. In framing the issue for the arbitrator, USW and Albemarle posed the following two stipulated questions: "Did the Company have causes [sic] to terminate the Grievants, Marcell Collor and Kevin Deville, on or about March 23, 2009? If not, what is the appropriate remedy?" The arbitrator credited the Grievants with making several attempts to report the spill and with bringing the spill to the attention of security within five minutes of discovering the incident. The arbitrator determined the five minute delay did not measurably increase the leak's costs to the Company. Still, relying on Company safety policies, the arbitrator strictly construed the Grievants' obligation to report spills "immediately," finding that when they could not reach Ourso by phone themselves, the Grievants "should have either called Security or pulled the alarm." He noted that "[t]he Grievants[] . . . seemed to be more concerned about leaving work than fulfilling their obligations as employees."

The arbitrator adverted to provisions in the CBA touching on Albemarle's authority to discipline employees for safety breaches. Article III of the CBA, "Management Rights," provides that "the suspending, disciplining and discharging employees for cause . . . are all rights solely of the COMPANY." The CBA nowhere defines what employee actions are "cause" for sanction. Article 906 of the CBA does express that "[s]trict adherence to the safety rules . . . is a condition of employment." Citing Article 906, the arbitrator found the Grievants had not strictly adhered to the Company's safety rules in failing to "ma[ke] immediate contact with supervision or security for approximately five (5) minutes." That violation, the arbitrator concluded, provided "cause for the Employer to issue discipline." The arbitrator reasoned, however, that "discharge was not appropriate" because the Grievants had no prior safety violations, were

exiting the facility after completing their day's work, and succeeded in notifying the proper persons of the spill. The arbitrator found the violation instead "was a cause for a lengthy suspension." He ordered the Grievants reinstated without loss of seniority, but also without backpay for the period during which they had been terminated. Under the arbitrator's decision, issued May 17, 2010, the Grievants faced a penalty of approximately fourteen months lost wages.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001), and apply the same standards as the district court. *Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206 (5th Cir. 2012). Significantly, judicial review of an arbitration award arising from the terms of a CBA is "narrowly limited." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *see also United Food & Commercial Workers Union AFL-CIO v. Pilgrim's Pride Corp.*, 193 F.3d 328, 332 (5th Cir. 1999) ("The award should be upheld if it draws its essence from the collective bargaining agreement . . . and the arbitrator did not exceed his or her authority under the CBA.") (internal quotation marks and citation omitted). However, if the arbitrator's decision exceeds the express, jurisdictional limits of the CBA, "judicial deference is at an end." *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989).

## DISCUSSION

Albemarle challenges the arbitrator's award on two grounds. Albemarle first contends that the arbitrator's finding of "cause for the Employer to issue

discipline," left no choice under the CBA but to affirm the Company's decision to terminate the Grievants. Second, Albemarle maintains that the award is unenforceable as a violation of public policy. Under narrowly limited judicial review of an arbitration award, neither argument is persuasive.

## A.    The Arbitrator's Authority under the CBA

Albemarle reasons from the stipulated questions before the arbitrator: (1) "Did the Company have cause[] to terminate the Grievants, Marcell Collor and Kevin Deville, on or about March 23, 2009? [(2)] If not, what is the appropriate remedy?" Since the arbitrator found the Grievants in violation of Article 906, which states that "[s]trict adherence to the safety rules . . . is a condition of employment," and determined that breaching Article 906 gave rise to "cause," he was required to answer question (1) in the affirmative. So doing, he could not advance to question (2) and review Albemarle's choice of discipline.

Albemarle argues that result is compelled by our decision in *E.I. DuPont de Nemours & Co. v. Local 900 of the International Chemical Workers Union, AFL-CIO*, 968 F.2d 456 (5th Cir. 1992). In that case, two employees were fired for using marijuana on company premises. *Id.* at 457. The CBA in *DuPont* prohibited discharge except for just cause. *Id.* The issue presented to the arbitrator by the parties was nearly identical to the stipulated questions in the case at bar. *Id.* at 458. In *DuPont*, however, the arbitrator found that the employer had "'[u]nquestionably . . . made it plain to its employees that using drugs on the Company premises was a discharge offense.'" *Id.* at 458. The arbitrator found by clear and convincing evidence that the terminated employees had used marijuana on company property and that discharge accordingly was an available remedy, but nonetheless determined that discharge was inappropriate. *Id.* We found the arbitrator had exceeded his authority under the CBA in finding just cause to terminate the employees yet imposing a lesser punishment. *Id.* at 458–59; *see also Am. Eagle Airlines*, *Inc. v. Air Line Pilots*

No. 11-31185

*Ass'n Int'l*, 343 F.3d 401, 407–10 (5th Cir. 2003) (holding same where "the Board determined that Balser's 'violation' of American Eagle's 'anti-harassment policy' provided American Eagle with 'not only a right, but a duty to rid the workplace' of Balser's conduct" but the Board had also found, contrary to the express language of the CBA, that a procedural default by the employer permitted finding a lesser sanction than discharge appropriate).

We drew support in *DuPont* in part from *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Association*, 889 F.2d 599 (5th Cir. 1989). The CBA in *Delta Queen* read: "'No Officer shall be discharged except for *proper cause* such as, but not limited to, inefficiency, insubordination, *carelessness*, or disregard of the rules of the Company.'" 889 F.2d at 601. The arbitrator found that a riverboat captain employed by the company had been "'grossly careless'" in the operation of his vessel, but that to avoid disparate treatment of employees, the captain should nevertheless be reinstated. *Id.* We concluded that where a CBA "defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed." *Id.* at 604. Having found proper cause for discharge as the CBA defined it, the arbitrator could not issue another form of discipline. *Id.* As we later observed, *Delta Queen* and *DuPont* teach that "when authority to impose a lesser alternative sanction cannot be arguably inferred from a CBA, the arbitrator may not exceed the scope of the CBA to fashion one." *Weber Aircraft*, 253 F.3d at 825.

We do not accept, as Albemarle advances, that the arbitrator in this case was similarly constrained by the CBA to require the Grievants' terminations. The CBA does not make clear that any violation of safety rules is an offense requiring discharge. Article III provides that Albemarle, "for cause," may not only "discharg[e]," but also "suspend[]" or "disciplin[e]" its employees. Thus, by its terms, the CBA contemplates situations in which a finding of "cause" could

6

support lesser sanctions than termination. *See Weber Aircraft*, 253 F.3d at 824 (rejecting an employer's challenge to the arbitrator's decision to vacate the employer's sanction of discharge and instead order suspension where the CBA could be read to permit either suspension or discharge for the offense at issue). The arbitrator, having been given the matter to arbitrate, made no implicit or explicit finding that Albemarle had entertained cause enough to discharge the Grievants; rather, he explicitly concluded the opposite, that "discharge was not appropriate," and that there was instead "cause for the Employer to issue discipline." We cannot say that he erred in so concluding, let alone that he was not "even arguably construing or applying the contract and acting within the scope of his authority." *Misco, Inc.*, 484 U.S. at 38.

Albemarle's position is also in tension with our precedent stating that explicating broad CBA terms like "cause," when left undefined by contract, is the arbitrator's charge. *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 820 (5th Cir. 1973) ("Rather, by using only the general words 'proper cause,' [the agreement] leaves the question of what is a good reason for discharge—the ultimate disciplinary measure—for subsequent interpretation."). Had the Company wished to remove doubt as to whether safety violations like the Grievants' met the criteria for cause to terminate, it had only "to bargain for a specific list of violations that will be considered sufficient grounds for discharge" in the CBA. *Id.*; *see Johnston-Tombigbee Furniture Mfg. Co. v. Local Union No. 2462, United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 596 F.2d 126, 129 (5th Cir. 1979).

Nor does the "condition of employment" language in Article 906 require finding the Grievants committed a discharge offense. Granted, an arbitrator could quite naturally read the CBA to specify that Albemarle employees' jobs are contingent on strict adherence to safety rules. But that is not the only arguable

reading. Indeed, the CBA provides no clear indication that the "condition of employment" language in Article 906 is intended to support disciplinary sanctions. Rather, the phrase occurs within a contract term otherwise describing management and union obligations to ensure adequate safety in aspirational tones.[1] It nowhere references "termination" or "discharge" or the Company's Article III authority to sanction, according to gradations of severity, employees. Reading "condition of employment" as the Company suggests also assumes that all safety violations mandate the same, harsh penalty of termination. But as the Company's Emergency Response Manual indicates, spills may differ in severity between major and minor and call for different responses by employees. An arbitrator might correspondingly infer degrees of punishment for infractions based on the egregiousness of employee conduct and the character of the spill.

We find persuasive the Tenth Circuit's decision in *Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201 (10th Cir. 1999), in which the court found room for multiple meanings in "condition of employment," even when that phrase was

---

[1] Article 906 in full reads:

906.    Safety and Health

A. The COMPANY will continue to promote and improve safety, health, and sanitary conditions at the PDC and to provide such safety equipment as is necessary to the proper fulfillment of this program. Matters pertaining to safety, health and sanitary conditions will be proper subject for discussion between the COMPANY and the UNION. The UNION will promote safety among its members and cooperate with the COMPANY in carrying out the safety program. *Strict adherence to the safety rules and participation in the PDC safety program is a condition of employment.*

B. Each employee at the PDC is part of a safety team. Team captains and other team members depend on each employee to attend scheduled safety meetings and contribute to the achievement of the team's goals and objectives. Participation in safety team activities and attendance of safety meetings is a condition of employment.

more directly linked to disciplinary provisions than it is here. The court in *Kennecott* was similarly faced with a CBA that allowed the employer to discharge or discipline for "just cause," but did not itself define "just cause." *Id.* at 1203. A separate agreement between the employer and union barred drug use in the workplace, instituted employee drug testing, and announced that "'[c]ompliance with this Policy is a *condition of employment*,'" noting that the "'[t]he Company intends to take disciplinary action, up to and including termination, against any employee who violates this Policy.'" *Id.* at 1203 (emphasis added). Interpreting those contracts, the arbitrator reduced the punishment from discharge to reinstatement without backpay for a truck driver who tested positive for marijuana use after his dump truck rolled over in part due to mechanical failure. *Id.* at 1203. On appeal to the Tenth Circuit, the employer pressed the same argument Albemarle does here, that violation of the substance abuse policy "condition of employment" was tantamount to "just cause" to discharge the employee, and that the arbitrator could not alter the penalty once he found the employee had violated the substance abuse policy. *Id.* at 1205. The court rejected that reasoning, stating: "This is simply a matter of interpretation. It is the province of the arbitrator to interpret contractual provisions and a reviewing court may not substitute its interpretation for that of the arbitrator." *Id.* at 1205.[2] Similarly, in this case, the arbitrator's reading

---

[2] Also instructive is the Seventh Circuit's decision in *Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770*, 558 F.3d 670 (7th Cir. 2009), where the arbitrator confirmed the employee had violated a safety rule for which the CBA specifically provided "'the Employee may be immediately discharged.'" *Id.* at 672–73 (emphasis omitted). The arbitrator relied on the permissive word "may" in the CBA provision, concluding the employer lacked just cause, based on the circumstances of the infraction, to fire the employee, and instead imposed a six-month, unpaid suspension. *Id.* at 674. The Seventh Circuit rejected the employer's argument that the CBA prevented the arbitrator from assigning punishment short of discharge, finding the arbitrator's interpretation "was tethered to the language of the agreement." *Id.* at 676.

of "cause" in light of "condition of employment" was within the bounds of his authority under the CBA.

## B.     Violation of Public Policy

Last, Albemarle urges that enforcing the arbitrator's decision would violate public policy.  Although a CBA may be unenforceable for contravening public policy, the Supreme Court has made clear that this bar is a high one, and "any such public policy must be explicit, well defined, and dominant."  *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (internal quotation marks omitted); *see Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 418 (5th Cir. 2009).  Albemarle notes that it is "*required by law* to report unpermitted chemical spills and perform prompt remedial action so as to eliminate those releases that could pose a threat to human health or the environment."  While that imperative is true, the question is not whether the spill, or even the failure of the Grievants to report it immediately, is against public policy, but whether the CBA, in providing for the Grievants' reinstatement following the incident, is contrary to "public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests."  *Id.* at 62-63.  In the present case, the Grievants made a serious error in the manner they reported the spill for which they are being strictly disciplined.  However, the arbitrator at the same time found that the Grievants had no prior record of safety violations; that a gasket failure, and apparently not the Grievants, was responsible for causing the leak; that the Grievants reported the incident within five minutes to a security guard who quickly reached a supervisor; and that the spill was not cause for issuing emergency notifications.  In light of the factual record, Albemarle does not articulate how the CBA, if read by the arbitrator to permit reinstating the Grievants after sanctioning them fourteen months lost wages, violates public policy.  We find the public policy exception does not apply.

No. 11-31185

## CONCLUSION

We conclude that because the arbitrator's award neither violated the terms of the CBA nor public policy, we must enforce it. We REVERSE the award of summary judgment in favor of Albemarle and RENDER judgment in favor of USW.