# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 14, 2014

No. 12-41119

Lyle W. Cayce
Clerk

UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,

        Plaintiff–Appellant

v.

DELEK REFINING, LTD.,

        Defendant–Appellee

*************************************************************************

DELEK US HOLDINGS, INC.

        Plaintiff–Appellee

v.

UNITED STEELWORKERS AFL-CIO; UNITED STEELWORKERS, LOCAL 202

        Defendants-Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:11-CV-186

No. 12-41119

Before HIGGINGBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellee Delek US Holdings, Inc. ("Delek") terminated Steve Smith ("Smith") for "unacceptable performance and insubordination." Appellants United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union and its Local 202, AFL-CIO (collectively the "Union") filed a grievance. Delek and the Union submitted the issue to arbitration. Arbitrator Daniel Jennings ("Arbitrator Jennings") determined that just cause existed to suspend—but not discharge—Smith. The Union brought suit to enforce the arbitration award, and Delek responded with its own suit seeking vacatur of the arbitration award. After the cases were consolidated, both parties moved for summary judgment. Finding that the arbitrator exceeded his authority, the district court denied the Union's motion for summary judgment, granted Delek's motion for summary judgment, and vacated the arbitration award. For the reasons stated herein, we reverse the grant of summary judgment in favor of Delek, and render judgment in favor of the Union.

## I.  FACTS AND PROCEEDINGS

Delek operates an oil refinery in Tyler, Texas that produces gasoline, diesel fuel, airplane fuel, and other petroleum products. Smith had been an employee of Delek for approximately nineteen years. At the time of his termination, he worked as a Pumper/Blender, a position he had held for approximately twelve years. Smith's responsibilities included transferring crude oil and refined petroleum products through pipelines to and from the operating units and to a variety of storage tanks. Prior to the incident that precipitated

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 12-41119

Smith's termination, Smith had four separate disciplinary incidents related to mishandling of oil and petroleum products.  First, on December 4, 2005, Smith spilled 100 barrels of product on the ground.  Then, on January 18, 2006, Smith spilled another 800 barrels of oil.  Frank Simmons, Operations Manager at the time, warned Smith that future mishandling incidents would result in further discipline up to and including discharge.  On September 3, 2006, Smith spilled 120 barrels of oil onto the ground, and failed to report the spill to his supervisor. Delek suspended Smith without pay for four days on September 8, 2006, and warned him that "[a]ny additional performance or safety issues will result in immediate separation of employment."  Finally, on December 12, 2006, Smith improperly transferred product between tanks, jeopardizing the quality of military-grade jet fuel.  Although Delek initially discharged Smith, it later rescinded the termination and issued him a warning on December 20, 2006 that "[a]ny future performance or safety issues of any nature or severity w[ould] result in immediate separation of employment."

Nearly two years later, a fifth incident led to Smith's termination at issue in this appeal.  On October 27, 2008, Smith transferred 12,959 barrels of "slop oil"[1] from one tank to the crude oil unit.  Delek alleged that the transfer was in direct violation of a "Daily Report" instructing employees not to transfer slop oil on that day.  As a result of Smith's actions, Delek discharged Smith on November 3, 2008 for "unacceptable performance and insubordination."  The Union filed a grievance on Smith's behalf on November 10, 2008.

Pursuant to a collective bargaining agreement ("CBA") between Delek and the Union, the parties submitted the dispute over Smith's discharge to arbitration. According to its terms, the CBA provided the arbitrator "jurisdiction and authority to interpret and apply the provisions in the determination of such

---

[1] "Slop oil" refers to oil that is recovered after water is removed from mixtures of oil and water that occur at different parts of the refinery.

grievances but he shall not have jurisdiction or authority to add to or alter in any way the provisions of this Contract." The CBA further provided: "The Union recognizes that the right of Management is to manage the plant, to hire, fire and discipline for just cause . . . and to perform other managerial functions." The parties selected Arbitrator Jennings to hear the grievance.

Delek contended at arbitration that it had just cause to fire Smith because the Daily Report in effect on October 27, 2008 directed Smith not to transfer slop oil. During the arbitration hearing, Smith contested the authenticity of Delek's Daily Report and produced a conflicting version that directed Smith to transfer slop oil into the crude unit. After Delek investigated the conflicting Daily Reports at Arbitrator Jennings's request, Arbitrator Jennings determined that Delek had failed to establish the authenticity of its proffered version. As a result, the arbitrator concluded that Delek lacked just cause to discharge Smith, but found that Delek "had sufficient and reasonable cause to discipline [Smith] for not contacting his supervisor before pumping 12,959 barrels of slop oil from tank 162 into the crude unit." Although Arbitrator Jennings recognized Delek's December 20, 2006 disciplinary warning that "any future performance or safety issues of any nature or severity will result in immediate separation of employment," he "determine[d] that a suspension of two months without pay [was] sufficient discipline."

After the arbitrator issued his opinion and award on March 7, 2011, Delek notified the Union that it did not intend to abide by the award. The Union then sued in federal court seeking enforcement of the arbitration award under 29 U.S.C. § 185, and Delek filed suit seeking vacatur of the award. The district court consolidated the cases and both parties moved for summary judgment. The magistrate judge determined that the arbitrator "implicitly found just cause for discharge" and therefore "any remedial authority to determine a 'proper remedy,' pursuant to the issues submitted to him by the parties for arbitration,

was not triggered." Finding that the arbitrator "exceeded his authority," the magistrate judge recommended that the district court resolve the motions for summary judgment in Delek's favor and vacate the arbitration award. The district court adopted the magistrate judge's findings and conclusions, holding that "[t]he arbitrator exceeded his authority as set by an arguable construction and application of the CBA" and that "[t]he arbitrator made an implicit finding of just cause for discharge and improperly fashioned an alternate remedy." The Union timely filed a notice of appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Union appeals the district court's final decision on the parties' cross-motions for summary judgment. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

This Court reviews the district court's grant of summary judgment de novo, applying the same standards as the district court. *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013) (citations omitted). "[J]udicial review of an arbitration award arising from the terms of a CBA is narrowly limited." *Id.* (citation and internal quotation marks omitted). If the arbitrator acted within the ambit of his authority, "as set by an arguable construction and application of the CBA," then this Court has no authority to reconsider the merits of the arbitral award. *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001) (citation omitted). Instead, the arbitrator's construction and award must be affirmed no matter how "good, bad, or ugly." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2071 (2013). This holds true "even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA," *Weber Aircraft*, 253 F.3d at 824 (citation omitted), and even if "a court is convinced [the aribtrator] committed serious error," *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

No. 12-41119

"Where an arbitrator exceeds his contractual authority," however, "vacation or modification of the award is an appropriate remedy." *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989) (citation omitted). This Court will "scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement," *E.I. DuPont de Nemours & Co. v. Local 900 of Int'l Chem. Workers Union*, 968 F.2d 456, 458 (5th Cir. 1992) (per curiam) (citation omitted), and will vacate any arbitration award that reflects the arbitrator's "own brand of industrial justice" and does not "draw[] its essence from the collective bargaining agreement," *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen*, 889 F.2d at 602.

## III.  DISCUSSION

The question before this Court is whether Arbitrator Jennings acted within the ambit of his authority, as set forth by an arguable construction of the CBA, when he found cause to suspend, but not discharge, Smith. To answer this question, we must decide whether Arbitrator Jennings's finding—that Smith failed to contact his supervisor before pumping slop oil—left him no choice under the CBA but to affirm Delek's decision to terminate Smith and, thus, no authority to fashion an alternative remedy. Relying upon our decision in *DuPont*, the district court vacated the arbitration award. The district court reasoned that the arbitrator's language resulted in an implicit finding of just cause to discharge such that he was not authorized to fashion a less drastic remedy. On the facts of this case, however, we hold that *DuPont* does not support vacatur of the award here. Instead, *Albemarle,* decided after the district court rendered judgment, compels this Court to affirm the arbitration award.

6

No. 12-41119

To better understand the *DuPont* decision, we must first discuss our opinion in *Delta Queen*. In *Delta Queen*, a CBA provided that "[n]o Officer shall be discharged except for *proper cause* such as, but not limited to, inefficiency, insubordination, *carelessness*, or disregard of the rules of the Company." 889 F.2d at 601. The arbitrator found that the discharged employee had been "grossly careless," but nevertheless ordered him reinstated because the employee had also been the victim of disparate treatment. *Id.* As here, the employer challenged the arbitration award, alleging "that the arbitrator, having found gross carelessness, [was] foreclosed from awarding a remedy at odds with the company-imposed discipline." *Id.* This Court agreed and stated that, "[i]f a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed." *Id.* at 604. The CBA clearly stated that "proper cause" for discharge included "carelessness" and so the arbitrator, having explicitly found "gross carelessness," impliedly found cause to discharge under the CBA. *Id.* The CBA therefore "proscribed the arbitrator from reinstating the discharged employee." *Id.* ("[W]here an arbitrator fails to make an express finding of proper cause, he nevertheless will be so bound if he finds that the employee committed certain underlying acts that constitute proper cause under the collective bargaining agreement.").

The *DuPont* opinion drew support from *Delta Queen*. The CBA in *DuPont* provided that "no employee will be discharged . . . except for just cause." 968 F.2d at 459. The parties had agreed that discharge was available only if DuPont proved that its employees used marijuana while on its premises. *Id.* at 458. Although the arbitrator found that DuPont had proven as much, the arbitrator determined that discharge was inappropriate and instead ordered reinstatement, rehabilitative treatment, and drug testing. *Id.* Relying upon *Delta Queen*, this Court held that while the arbitrator did not explicitly find that

the employer had just cause to discharge the employees, the arbitrator's language nevertheless constituted an implicit finding of just cause to discharge. *Id.* at 458–59. And having implicitly found just cause to discharge, the arbitrator exceeded his authority by fashioning an alternative remedy. *Id.* at 459.

Unlike under the CBAs in *Delta Queen* and *DuPont*, discharge was not the only available sanction under the CBA at issue in *Albemarle*. The CBA in *Albemarle* provided that "the suspending, disciplining and discharging [of] employees for cause . . . are all rights solely of the [employer]." 703 F.3d at 823. Relying upon this provision, we distinguished the CBA from those in *Delta Queen* and *DuPont*:

> We do not accept, as Albemarle advances, that the arbitrator in this case was similarly constrained by the CBA to require the Grievants' terminations [as in *Delta Queen* and *DuPont*]. The CBA does not make clear that any violation of safety rules is an offense requiring discharge. Article III provides that Albemarle, "for cause," may not only "discharg[e]," but also "suspend[]" or "disciplin[e]" its employees. Thus, by its terms, the CBA contemplates situations in which a finding of "cause" could support lesser sanctions than termination.

*Id.* at 825 (first alteration added) (citing *Weber Aircraft*, 253 F.3d at 824–25). In fashioning a lesser sanction, the arbitrator "made no implicit or explicit finding that Albemarle had entertained cause enough to discharge the Grievants; rather, he explicitly concluded the opposite, that 'discharge was not appropriate,' and that there was instead 'cause for the Employer to issue discipline.'" *Id.* (citation omitted). Because "the CBA contemplate[d] situations in which a finding of 'cause' could support lesser sanctions than termination," it was within the ambit of the arbitrator's authority to fashion this alternative remedy despite having found that the employees violated a safety procedure. *See id.* (citing *Weber Aircraft*, 253 F.3d at 824). Accordingly, we rejected the employer's argument

that the arbitrator overstepped his authority by reinstating the discharged employees despite having found "cause" in the form of a violation of the company's safety procedures. *Id.* at 824.

We likewise reject Delek's argument, that Arbitrator Jennings exceeded his authority by fashioning an alternative remedy, because the distinguishing facts in *Albemarle* similarly distinguish the present matter from *Delta Queen* and *DuPont*. Whereas the CBAs in *Delta Queen* and *DuPont* contemplated discharge as the only available sanction upon a finding of cause, the CBA here—like that in *Albemarle*—contemplated both discipline and discharge as available sanctions. *Compare Albemarle*, 703 F.3d at 824, *with Delta Queen*, 889 F.2d at 601, *and DuPont*, 968 F.2d at 459. Providing for the right to "fire and discipline for just cause," the CBA between Delek and the Union did not clearly mandate that any performance or safety issues required discharge. *See Albemarle*, 703 F.3d at 826 (holding that the availability of discharge, suspension, and discipline "for cause" did not "make clear that any violation of safety rules is an offense requiring discharge"). Rather, "by its terms, the CBA [between Delek and the Union] contemplate[d] situations in which a finding of 'cause' could support lesser sanctions than terminations." *See id.*

Thus, whereas the arbitrators in *Delta Queen* and *DuPont* were powerless to fashion lesser alternative remedies, *see Albemarle*, 703 F.3d at 825, Arbitrator Jennings had authority under the CBA to fashion an alternative remedy—despite finding that Smith failed to contact his supervisor before transferring slop oil—because "lesser alternative sanction[s]" could "be arguably inferred from [the] CBA," *see id.* (quoting *Weber Aircraft*, 253 F.3d at 825). In fashioning a remedy, Arbitrator Jennings "made no implicit or explicit finding that [Delek] had . . . cause enough to discharge [Smith]; rather, he explicitly concluded the opposite, that discharge was not appropriate, and that there was instead cause for [Delek] to issue discipline." *See id.* at 824 (citation omitted).

As in *Albemarle*, then, the provision for sanctions less than termination and the arbitrator's explicit conclusion that discharge was not appropriate compels us to affirm the arbitral award.  Arbitrator Jennings did not overstep his authority when he fashioned an alternative remedy upon finding that Smith failed to contact his supervisor before transferring slop oil.

Delek's December 20, 2006 warning—that "[a]ny future performance or safety issues of any nature or severity w[ould] result in immediate separation of employment"—does not suggest otherwise.  This Court has previously held that "where an arbitrator fails to make an express finding of proper cause, he nevertheless will be so bound if he finds that the employee committed certain underlying acts that constitute proper cause *under the collective bargaining agreement*." *Delta Queen*, 889 F.2d at 604 (emphasis added).  But, the CBA here does not define "cause" to discharge.  "Had [Delek] wished to remove doubt as to whether [performance issues like Smith's] met the criteria for cause to terminate, it had only to bargain for a specific list of violations that will be considered sufficient grounds for discharge in the CBA."  *See Albemarle*, 703 F.3d at 826 (citations and internal quotations marks omitted).  Delek did not do so, but simply issued a warning and now contends that its warning to Smith constituted a binding "last chance agreement" ("LCA") that supplements the CBA.  *See, e.g., Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 406 (5th Cir. 2009) ("An LCA is a supplement to the CBA, and its terms are just as binding on an arbitrator as those of the CBA: Unambiguous provisions of an LCA may not be ignored." (citation omitted)).  Although the parties produced the warning to the arbitrator, who made specific reference to it in his award, Delek did not advance its LCA argument during arbitration.  Because Delek raises this argument for the first time in federal court, we decline to consider it and decline to treat Delek's warning to Smith as a binding supplement to the CBA.  *See Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002) ("It is well settled that

No. 12-41119

a party may not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse." (citation omitted)); *see also Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 499 (5th Cir. 2003) (declining to accept a company's argument that it did not advance during arbitration but raised for the first time in federal court).

Despite Delek's warning to Smith, the CBA did not establish criteria for determining cause to discharge. Explicating cause, then, was the arbitrator's charge. *Albemarle*, 703 F.3d at 826 (citation omitted). In carrying out that charge, Arbitrator Jennings found cause sufficient to suspend but not to discharge. With either sanction available under an arguable construction of the CBA, Arbitrator Jennings's finding that Smith failed to contact his supervisor before pumping slop oil did not leave discharge as the only available sanction under the CBA. Accordingly, we cannot say that Arbitrator Jennings exceeded his authority in finding suspension appropriate, "let alone that he was not 'even arguably construing or applying the contract and acting within the scope of his authority.'" *Id.* at 826 (quoting *Misco, Inc.*, 484 U.S. at 38). We can go no further in evaluating the arbitration award.[2]

## IV. CONCLUSION

We conclude that the arbitrator did not exceed his authority when he fashioned an alternative remedy. We REVERSE the district court's award of summary judgment in favor of Delek vacating the arbitration award, RENDER judgment in favor of the Union, and AFFIRM the arbitration award.

---

[2] Delek argues by reference to its district court pleadings that the arbitration award should be vacated pursuant to the public policy exception. We decline to address this argument as inadequately briefed. *See, e.g.*, *United States v. Hall*, 152 F.3d 381, 398 n.9 (5th Cir. 1998) (citing *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993)) (declining to address, as inadequately briefed, arguments asserted by incorporating district court pleadings into appellate brief ), *abrogated on other grounds by United States v. Martinez–Salazar*, 528 U.S. 304 (2000).

No. 12-41119

EDITH BROWN CLEMENT, Circuit Judge, dissenting.

For decades, this court has recognized district courts' ability to find just cause even when the arbitrator does not expressly state that it exists. *E.I. DuPont de Nemours & Co. v. Local 900 of Int'l Chem. Workers Union, AFL-CIO* 968 F.2d 456, 458 (5th Cir. 1992) ("[W]here an arbitrator implicitly finds that just cause exists, he need not recite the operative phrase 'just cause.'"); *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989) (holding that "where an arbitrator fails to make an express finding of proper cause, he nevertheless will be so bound if he finds that the employee committed certain underlying acts that constitute proper cause"). Because the majority's analysis unnecessarily extends this court's recent decision in *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821 (5th Cir. 2013), to effectively abrogate our prior holdings on implicit findings of just cause, I respectfully dissent.

The arbitrator's opinion stated that, after numerous prior infractions, Delek issued Smith a final warning that "[a]ny future performance or safety issues of any nature or severity will result in immediate separation of employment." It later noted that, after his latest infraction, "the Company had sufficient and reasonable cause to discipline [Smith] for not contacting his supervisor before pumping the 12,959 barrels of slop oil from tank 162 into the crude unit." Nothing more is required for us to hold that the arbitrator implicitly found just cause for termination.

The majority's reliance on *Albemarle* is misplaced. The chemicals manufacturer in *Albemarle* terminated two employees for violating safety protocols. *Id.* at 823. As the employees were leaving work after completing their shift, they noticed liquid leaking from a building. They attempted to reach their foreman by phone for five minutes, and then reported the leak to the security guard on duty, who was able to reach their foreman by radio. But because

company protocol required employees to *immediately* report chemical spills to supervision or security, the company terminated the employees a week later. *Id*. The *Albemarle* court noted that "[t]he arbitrator reasoned . . . 'that discharge was not appropriate' because the Grievants had no prior safety violations, were exiting the facility after completing their day's work, and succeeded in notifying the proper persons of the spill." *Id*. at 824. The court also noted that "[t]he arbitrator determined the five minute delay [in reporting the spill] did not measurably increase the leak's costs to the Company." *Id*. at 823.

A comparison with our facts reveals why *Albemarle* is inapposite. As noted above, Smith's conduct affirmatively caused the erroneous slop oil transfer, which affected Delek's profits and costs. And unlike the workers in *Albemarle*, the October 27, 2008 transfer was not Smith's first transgression, but instead came after several prior incidents that resulted in two final warnings and a suspension. Unlike in *Albemarle*, Smith's accident-prone history and Delek's repeated attempts to discipline and warn him provide the requisite backdrop for holding that the arbitrator's finding of just cause to discipline was also an implicit finding of just cause to terminate. Instead, this case's facts are closer to those in *DuPont*, *Delta Queen*, and other cases where this court found the arbitrator to have exceeded his authority by fashioning an alternative remedy after implicitly finding just cause to terminate.

This court has rejected previous attempts to narrowly construe, as the majority does here, *DuPont*'s and *Delta Queen*'s holdings. *See Am. Eagle AirLine, Inc. v. Airline Pilots Assoc., Int'l*, 343 F.3d 401, 410 (5th Cir. 2003) ("[T]here is simply nothing in the language of *DuPont* or *Delta Queen* to suggest that these holdings were unique to their respective facts."). And for good reason: adopting such a narrow reading of *DuPont* and *Delta Queen* effectively limits those cases' holdings to their facts, and effectively abrogates circuit precedent

while encroaching on any meaningful judicial review that remains over arbitral awards.

As did the magistrate judge and district court below, I believe that the arbitrator's decision here contained an implicit finding of just cause for termination.  Consistent with our holdings in *DuPont* and *Delta Queen*, I would affirm the district court's decision to vacate the arbitral award.