**Angela MAXWELL, a Minor, By her Mother, Kim MAXWELL, Plaintiff,**

v.

**The SCHOOL DISTRICT OF THE CITY OF PHILADELPHIA, et al., Defendants.**

**No. CIV.A. 98–1682.**

United States District Court, E.D. Pennsylvania.

May 18, 1999.

mother and attending the Barrett Middle School ("Barrett") in Philadelphia when she was attacked and raped in her classroom by fellow students. The District assigned Angela to Barrett consistent with its policy that learning disabled students attend designated schools and particular classes.

On February 25, 1997, Angela's class at school was meeting in room 304 for the day and Chu was assigned as the substitute teacher.[2] While Angela was in her classroom the school district defendants locked the classroom door, effectively blocking a student's ability to leave the room. At some time later that day, the students in the classroom became disruptive. In response to the student disruption, Chu announced to the class: "I don't care what you do as long as you do not bother me."

At some point following that statement, two students in the classroom, Ross and the late Tyree Brown,[3] seized an unidentified female student, took her to the rear of the classroom, and tried to rape her. Fortunately she was able to wrestle free and return to her seat. Though Chu saw exactly what happened, she did nothing. Shortly thereafter, Ross and Brown seized Angela and forced her to the rear of the classroom. After moving a portable blackboard to the back of the room, Ross and Brown assaulted Angela and proceeded to rape her on the floor behind the blackboard. While Angela was being assaulted and raped, Chu was aware of what was happening but once again failed to react. As a result of the attack, Angela suffered emotional, psychological, and physical injury. She became withdrawn, fearful, and embarrassed, and was temporarily unable to attend school.

Luther E. Weaver, Charles W. Bowser, Bowser, Weaver & Cousounis, Philadelphia, PA, for plaintiff.

Robert T. Lear, Elayne Bryn, Bryn & Vedder, Philadelphia, PA, for defendants.

### MEMORANDUM and ORDER

ANITA B. BRODY, District Judge.

The plaintiff, Angela Maxwell ("Angela"), brings this action by and through her parent and natural guardian, against the School District of the City of Philadelphia ("the District"), its superintendent, the middle school principal, and substitute teacher May Chen Chu ("Chu") (referred to collectively as "the school district defendants") under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment of the United States Constitution and for negligent infliction of emotional distress under state law.[1] Before me is defendant teacher May Chen Chu's 12(b)(6) motion to dismiss the claims alleged against her. I will deny the motion.

### I. Facts

According to the complaint, Angela was a special education student living with her

---

1. The plaintiff also brings an action against the District for violation of Title IX and for assault, battery, and negligent infliction of emotional distress against Kenneth Ross, who was a fellow student of the plaintiff.

2. The complaint alleges that the District failed to train and supervise defendant Chu as to the proper methods of teaching, controlling, and administering special education students.

3. Tyree Brown's death is unrelated to the facts in this case.

This incident was not Angela's first exposure to abusive conduct at Barrett. On prior occasions, both inside and outside her classroom, she was offensively sexually contacted, sexually harassed, intimidated and threatened by male students. These episodes of violence and sexual harassment against Angela and similar ones involving other female students were reported to school authorities, including the school district defendants and other District teachers and administrators. The school district defendants received specific complaints about the participation of defendant Ross and Brown in these assaults. Even in light of this information, the school district defendants failed to take corrective action and continued to place them in classrooms with special education students.

## II. Section 1983

■ In her motion to dismiss, defendant Chu asserts the affirmative defense of qualified immunity on the § 1983 [4] claim. Therefore, I must first determine whether she is entitled to that defense. The qualified immunity defense protects "officials exercising discretionary powers ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court clarified the analysis used to decide whether a plaintiff's allegations overcome this defense when it noted that a "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S.

226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

In this instance, the plaintiff and defendant Chu agree that the complaint meets the requirement that § 1983 actions may only be maintained against persons acting under state law, *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In addition, they concur that the plaintiff has a liberty interest in her personal bodily integrity that is protected by the Fourteenth Amendment. *Ingraham v. Wright,* 430 U.S. 651, 673–74, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). The parties dispute whether the plaintiff has shown that her constitutional rights have been breached.

Angela contends that her constitutional right to due process was violated because (1) there existed a special relationship between the school district defendants and herself, creating an affirmative constitutional duty on the part of the government officials to protect her from harm, (2) the school district defendants created a danger that culminated in the violation of her constitutional rights, and (3) the school district defendants are responsible for the existence of a policy, custom, or practice that permitted her injuries in violation of her constitutional rights.

## A. Special Relationship

■ In general the state has no affirmative obligation to protect its citizens from the violent acts of private individuals. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). When a special relationship exists between a person and the state, however, the state must

---

4. In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

affirmatively protect the individual against the violation of his or her constitutional rights by the private actions of a third party. Section 1983 liability attaches "when the state fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty." *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1369 (3d Cir.1992) (en banc) (citation omitted). The special relationship is one in which

> the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by ... the Due Process Clause.

*DeShaney,* at 200, 109 S.Ct. 998.

██ In *D.R.* the Third Circuit explains the parameters of a special relationship. Two female students were physically, verbally, and sexually molested by several male classmates multiple times a week. These attacks occurred in the unisex bathroom and darkroom that were part of the classroom to which the students had been assigned. The students' teacher and her superiors knew about the frequent misconduct, including sexual misconduct, exhibited by the student attackers, but took no action.[5]

The plaintiffs argued that the compulsory attendance laws and the *in loco parentis* status of the school employees placed them in custody during the school day, creating a basis for § 1983 liability. Rejecting the argument, the court explained that *DeShaney* primarily established a test predicated upon complete and exclusive physical custody. Because parents remain the primary caretakers for students, and maintain heightened involvement with spe-

cial education students, the plaintiffs' allegations failed to demonstrate the existence of custody. The court concluded that "the school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship [envisioned] in *DeShaney.*" *D.R.,* at 1372.

In this case, the plaintiff seeks to distinguish *D.R.* by enumerating allegedly key differences. Plaintiff points to the fact that the classroom was the place of the attack, the classroom door was locked, Angela had limited mental ability, the teacher was present and observed the incident, and this was a single incident. These differences fail to materially distinguish Angela's situation from that of D.R.

The plaintiff focuses too narrowly on the particular facts surrounding her rape, losing sight of the custodial element central to this theory of liability. Total and exclusive custody, not mere restraint, is at the heart of a due process claim relying upon a special relationship. Custody involves substantial curtailment over an individual's freedom, such that the state inhibits one's ability to meet his or her basic needs. *See D.R.,* at 1372; *see also, Fialkowski v. Greenwich Home for Children, Inc.,* 921 F.2d 459 (3d Cir.1990) (finding no substantial curtailment of personal liberty for voluntarily placed patient with freedom of movement). None of the factual distinctions articulated by the plaintiff transform the noncustodial relationship between her and the state defendants into a custodial one. Essentially, the situations involving Angela and D.R. are identical. In both cases, the plaintiffs were classified as special education students. In both cases, the state defendants were aware that male students continuously physically assaulted and sexually harassed their female classmates. In both cases, the teacher respon-

---

5. One plaintiff was an "exceptional student" due to hearing impairment and related com-

munication problems.

sible for the classroom in which the assault took place lacked control over her students and was alleged to be aware of the attack as it occurred.

The only difference that gives me pause is the locking of the relevant door and the resulting confinement. In *D.R.*, the students locked their victims in the bathroom. In this instance, the state actors locked the classroom door, restricting vulnerable and aggressive students to the same area. Nonetheless, this variation does not support liability based upon the special relationship theory. Locking the door to room 304 restrained Angela only during the few hours of the school day. The school district defendants' act did not inhibit her or her parents' ability to provide for her basic needs. *See also, C.M. v. Southeast Delco School District*, 828 F.Supp. 1179 (E.D.Pa. 1993) (temporary custodial restraints cannot establish § 1983 liability). As the relationship between the state and Angela remained noncustodial, she has failed to allege a § 1983 claim.

## B. State Created Danger

■ The rule that the state has no responsibility to protect its citizens from the violent acts of private parties finds a second exception when there has been a state created danger. If a state actor creates a danger which harms an individual or renders him or her more vulnerable to that danger, although the state actor does not actually harm the individual the state actor may be held to have violated the due process clause.

■ The state created danger basis for liability originally emanated from a suggestion in *DeShaney* that "[w]hile the State may have been aware of the dangers that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, at 201, 109 S.Ct. 998. This was specifically adopted by the Third Circuit in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996), and further explained in *Morse v. Lower Merion*

*School District*, 132 F.3d 902 (3d Cir.1997). The Third Circuit established a four-part test to determine whether a state actor should be held liable for injuries to a plaintiff that are inflicted by a private actor. Liability attaches if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; [and] (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp*, at 1208 (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.1995)).

■ Therefore I must first decide whether the rape of Angela was foreseeable and a fairly direct result of the state's actions. It clearly was both. Chu knew that Ross and Brown had attacked another student in the classroom earlier in the day and that they had hauled both Angela and the blackboard to the back of the room. In addition, to the extent that the school district defendants' knowledge of the student attackers' aggressive tendencies and the supervisory inadequacy in room 304 was attributable and, in fact, known to Chu, her failure to take any action directly correlated to the injuries caused to Angela.

These facts are distinguishable from *Morse*. In *Morse*, a mentally unstable woman entered a school through a rear door that was purposely left unlocked to allow construction workers access to the building. Once inside the school, the intruder entered a classroom and shot a teacher to death. The court considered the trespasser's actions unforeseeable because the state defendants were unaware that anyone, including the mentally ill intruder, posed a credible threat of violence to the school's inhabitants. In this instance, by contrast, Chu knew either firsthand or by attribution that Ross and Brown posed a threat to Angela and that

what they were planning would cause her harm.

The second prong of the test considers the mental state of the state actor as revealed through the person's actions. Though this prong involves an imprecise category of *mens rea*, the standard has been defined as acting with "willful disregard for or deliberate indifference to the plaintiff's safety." *Morse*, at 910 (citing *Kneipp*, at 1208 & n. 21). The complaint adequately alleges this prong. First, defendant Chu told a classroom full of disruptive students: "I don't care what you do as long as you do not bother me." Second, Chu remained idle during the attack on the first student and did nothing following the incident. In addition, she passively witnessed the assault on Angela and as a school district defendant allegedly participated in locking the classroom. A comparison with *Kneipp* reinforces this conclusion regarding Chu's mental state. In *Kneipp*, the police stopped a married couple while they were walking home from a bar in the middle of winter. After asking an officer's permission, the husband departed to relieve their babysitter, leaving his drunk wife with the officers. One officer sent her home alone, but she never arrived. Instead, she passed out and suffered severe cold-related injuries. The court found that the officer acted with deliberate indifference because he sent the plaintiff home unaccompanied, despite his awareness of her intoxicated and impaired condition. *Kneipp*, at 1208. Chu acted with a similarly culpable mental state because she failed to supervise obviously dangerous students in a classroom that she let get out of control.

The third prong examines whether there existed some relationship between the state and the plaintiff which makes the plaintiff as victim foreseeable. *Morse* teaches that this "foreseeable plaintiff" encompasses both "a specific person [and] a specific class of persons," *Morse*, at 913, although it did not decide whether those present at the high school constituted a sufficiently discrete group. In this instance, Chu knew that Angela was the object of the attack and still recklessly ignored the signs. This meets the "foreseeable plaintiff" test.

The fourth component of the test examines whether the state created the opportunity for the harm that befell the plaintiff. The dispositive factor is "whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable." *Morse*, at 915. The instant situation differs greatly from *D.R.*, in which two female students were repeatedly attacked by male classmates. Their teacher and other school administrators were aware of these incidents, which occurred in the classroom's bathroom and darkroom. The student attackers restrained their victims by locking the bathroom door and closing the darkroom door. According to the court, since bathrooms usually have locks and darkrooms must be separate from adjoining areas, the classroom's layout was not an "inherently dangerous environment," *D.R.*, at 1375. In this matter, by contrast, the state defendants locked the classroom door, isolating the victims with their attackers, and cutting the vulnerable students off from assistance. In addition, defendant Chu's statement informed the class that she would not control them. Essentially, the school district defendants, including defendant Chu, placed Angela directly in harm's way. Since the plaintiff has established each part of the test, she has properly alleged a § 1983 claim under the state created danger theory and the motion will not be granted on this count.

## C. State Established Policy, Custom, or Practice

■ Under this theory, local government bodies may be held liable if a state actor acts unconstitutionally pursuant to a government policy, custom, or practice. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under *Monell*, liability attaches when the injury results from the

implementation of a policy or custom made by the government body's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* at 694, 98 S.Ct. 2018. The plaintiff does not allege that defendant Chu establishes policy for the District. In addition, there is no *respondeat superior* liability under this theory. *See Monell,* at 691, 694 n. 58, 98 S.Ct. 2018. Therefore, the plaintiff cannot rely on this theory for a claim against defendant Chu.

III. Negligent Infliction of Emotional Distress

In addition to the § 1983 claim, defendant Chu seeks to dismiss a state law claim for negligent infliction of emotional distress. Because the resolution of a negligent infliction of emotional distress claim is fact intensive, the current record provides an insufficient factual basis to resolve defendant Chu's motion to dismiss.

**AND NOW,** this 18th day of May, 1999, **I DENY** defendant's motion to dismiss count one of the complaint (docket # 9). I reject the argument that the due process clause of the Fourteenth Amendment was violated based upon the special relationship theory or the presence of a state established policy, custom, or practice, but find a valid basis for the violation under the state created danger theory.

**I DENY** defendant's motion to dismiss count five (misnamed count seven) of the complaint alleging negligent infliction of emotional distress (docket # 9) without prejudice to raise the same issues at a later stage of the litigation.