# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 25, 2013

No. 13-20057

Lyle W. Cayce
Clerk

THE ESTATE OF C.A., A MINOR CHILD DECEASED; VINCENT
AGWUOKE, individually and on behalf of the heirs of C.A.; CELESTINA
AGWUOKE, individually and on behalf of the heirs of C.A.,

     Plaintiffs - Appellants

v.

PAUL CASTRO, Principal of the Westside High School, individually and in
his official capacity; VANESSA CORONADO, Individually and in her official
capacity; JOHN DOE COMPANY; RWS ARCHITECTS, INCORPORATED,
doing business as RWS Architecture; CBM ENGINEERS, INCORPORATED,
doing business as CBM Engineering; BRICKER & CANNADY,
INCORPORATED, formerly known as Willis, Bricker, & Cannady,
Incorporated; GILBANE DEVELOPMENT COMPANY, doing business as
Gilband Properties, Incorporated; GP HOUSTON, L.L.C.; THE JOHN DOE
COMPANY,

     Defendants – Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-531

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit
Judges.

No. 13-20057

PER CURIAM:*

C.A., a high school student, drowned in 2008 after a pool-based science experiment. The Estate of C.A., and Vincent and Celestina Agwuoke, individually and on behalf of the heirs of C.A. (collectively, "the Agwuokes") sued the school district and school employees under 42 U.S.C. § 1983 for violation of C.A.'s Fourteenth Amendment right to life. After granting the school employees summary judgment based on qualified immunity, the district court granted the district summary judgment. The court concluded that (1) C.A.'s constitutional rights were not violated because the Fifth Circuit does not recognize state-created danger claims, and (2) even if a "state-created danger" theory applied, the plaintiffs could not establish that the state was reckless. We AFFIRM.

## FACTS AND PROCEEDINGS

In 2008, C.A. was a senior at Westside High School in the Houston Independent School District ("the district" or "HISD"). On April 10, 2008, C.A. drowned in the deep end of the school swimming pool where students were playing after concluding a physics experiment.

At the time of his death, C.A. was a student in a Physics I class taught by Vanessa Coronado. In March 2008, Coronado assigned her class a project requiring them to build boats from only cardboard and duct tape in order to teach them about buoyancy. Coronado got the idea for the experiment from another physics teacher, Troy Gillespie, and students at the school had performed the buoyancy experiment for several years. Although the official rules of the experiment instructed students to stay in the shallow end of the

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

2

pool and to enter the water only while performing the experiment, the Agwuokes alleged that the official rules were historically not followed. They claim that Coronado had problems with students during past experiments, and that they often ignored her admonitions to avoid the deep end of the pool.

C.A.'s class performed the buoyancy experiment on April 10, 2008. The Agwuokes acknowledge that before commencing the experiment, Coronado instructed the students to be in the pool only while testing their team's boat and to stay out of the deep end. But after the boat testing was completed students remained in the pool during cleanup and engaged in "horseplay." Although the school's swimming coach (Coach Sikkema) was present during the experiment, he went back to his office after the experiments concluded and did not stay to supervise the cleanup. After Coronado may or may not have given them permission—a disputed fact issue—students began jumping and diving into the deep end of the swimming pool. Video footage shows that C.A. and a group of other students jumped into the water. As the other students swam to the other end of the pool, they were unaware that C.A. sank to the bottom and did not reach the shallow end.

Minutes later, a student on the school's swim team informed Sikkema that she noticed something in the pool. After realizing it was a body, Coronado and the student dove and retrieved C.A. Sikkema instructed someone to get the school nurse and later to dial 911. Despite the paramedics' attempts to resuscitate C.A., the attending physician at Hermann Memorial City Medical Center pronounced C.A. dead.

On February 19, 2010, the Agwuokes filed a complaint in the Southern District of Texas. The Agwuokes alleged that they had previously informed the school that C.A. did not know how to swim. In response to an athletic participation form submitted in August 2005, they claim to have provided

HISD with instructions that C.A. should not dive or swim in the school pool. After limited discovery, the individual-capacity defendants (Coronado and Principal Paul Castro) moved for summary judgment. On September 6, 2011, the district court granted their motion for summary judgment based on qualified immunity. On April 13, 2012, after all other defendants settled or were otherwise dismissed, HISD filed for summary judgment, which the district court granted on January 16, 2013.

The Agwuokes appeal both summary judgment orders and the final judgment entered against them. According to the Agwuokes, C.A.'s death "occurred (1) despite HISD and the individual-capacity defendants' awareness of the obvious dangers posed by the unsupervised use of a swimming pool; and (2) regardless of the fact that HISD was informed that C.A. should not be allowed to participate in swimming or diving activities." The Agwuokes claim also that "once C.A was in the dangerous situation and sunk to the bottom of the pool, Defendants' deliberate indifference caused him to stay there for several minutes drowning to death."

**STANDARD OF REVIEW**

We review the grant of summary judgment de novo, applying the same standards as the district court. *Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103*, 703 F.3d 821, 824 (5th Cir. 2013). Summary judgment is appropriate when the evidence indicates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 717 (5th Cir. 2013); Fed. R. Civ. P. 56(a). "We view the evidence and draw reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

No. 13-20057

**DISCUSSION**

The Agwuokes challenge the district court's dismissal of its claims against the individual defendants based on qualified immunity, and its dismissal of its claims against the district based on the fact that this court does not recognize the state-created danger theory of liability.

I. Individual Defendants' Qualified Immunity

State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations marks omitted). After a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013). We apply a two-pronged test in evaluating the applicability of the defense. The plaintiff "[f]irst . . . must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* We may consider these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

We hold that, for qualified immunity purposes, the Agwuokes failed to identify a constitutional violation. Even if they did, their arguments would fail under the qualified immunity test's second requirement that the constitutional violation be "clearly established."

A. Constitutional Violation

The Agwuokes argue that the individual-capacity defendants caused C.A. to be subjected to a violation of his right to life through their deliberately indifferent conduct.

While it is true that the "right to life" exists, a plaintiff seeking to defeat qualified immunity cannot state the alleged constitutional right so broadly. *See Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989) ("In overcoming the qualified immunity defense, it is not enough for the plaintiff to allege that the government official violated a clearly established right in the generalized sense for that 'would . . . convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging the violation of extremely abstract rights.'"). Even assuming the individual defendants caused C.A. "to be subjected" to a loss of life, this would not make out a cognizable constitutional violation without more particularized authority prohibiting defendants' conduct.

The Agwuokes do not allege a purposeful or intentional action by defendants against C.A., and despite their insistence that they are not alleging negligence, gross negligence, or defendants' "failure to protect," the lines of authority the district court identified and addressed in its opinion control in cases with C.A.'s facts. Insofar as individual defendants' actions violated school or city policies and ordinances, "[v]iolation of a state statute is not actionable under § 1983." *E.g., San Jacinto Sav. & Loan v. Kacal*, 928

F.2d 697, 701 n.4 (5th Cir. 1991); *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986) ("[T]he enforcement of state law is the job of the states, and the federal civil rights statute may not be used to bootstrap alleged violations of state law into federal claims.").   Nor, as the district court found, did the Houston ordinances or HISD policies on pool safety create individual entitlements that would be protected by the Fourteenth Amendment.  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 765–66 (2005).

We hold that the Agwuokes failed to identify a constitutional violation for qualified immunity purposes.

B. Clearly Established

When applying the second prong of the qualified immunity test, after identifying the constitutional right, we examine whether its "contours . . . are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 131 S. Ct. at 2083 (internal alterations and quotation marks omitted).  "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and footnote omitted).  While "[w]e do not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083.  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality" because a "general proposition . . . is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* at 2084.  An official "does not lose qualified immunity merely because a

certain right is clearly established in the abstract. . . . Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

In addition to the Agwuokes' failure to make out a cognizable constitutional violation, Castro and Coronado are entitled to qualified immunity because the right at issue was not clearly established. The Agwuokes claim that the individual defendants did more than fail to protect C.A. from the inherent dangers of swimming pool: they planned and approved a school project that placed students in a dangerous environment, and did so in a manner that disregarded reasonable and legally required safety measures. They conclude that if "a school official uses his or her extensive power to structure (or approve) curriculum in a way that is deliberately indifferent to a serious risk of harm to the students legally required to attend that school, and thereby proximately cause the death of a student, constitutional liability is appropriate."

Applying this case's facts to the standard set forth in *al-Kidd* and *Kinney*, the Agwuokes would need to demonstrate that reasonable teachers and school officials were on notice that designing and executing a high school science experiment involving a pool violated the constitutional right to life of any student that may drown. The Agwuokes do not identify "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371–72 (internal quotation marks omitted). Instead, they note merely that C.A. had a "right to life" under the Fourteenth Amendment, which the individual defendants allegedly violated through

8

their deliberately indifferent conduct. This falls short of the requirement to show "defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Crostley*, 717 F.3d at 422.

We hold that, even assuming a constitutional violation, the individual defendants were not on notice that their conduct violated a clearly established constitutional right because no case has found a violation under similar facts.[1] The district court's dismissal of the claims against the individual defendants is affirmed.

## II. Liability of the HISD

With respect to the school district's liability, the Agwuokes claim the district court erred in granting summary judgment in favor of HISD because it "improperly concluded that the state-created danger theory is not viable in this Circuit." This was error, they argue, because although this circuit has never adopted the theory, it also has never rejected its viability. We affirm the district court's grant of summary judgment in favor of the school district, and decline the Agwuokes' invitation to use this case to adopt the state-created danger theory as the law in this circuit.

The state-created danger theory of liability derives from the Supreme Court's opinion in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). In *DeShaney*, the Court held that the

---

[1] To the contrary, federal courts have upheld the qualified immunity of individual defendants involved in the planning and supervision of students' water activities. *DeAnzona v. City & Cnty. of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000); *Slade v. Bd. of Sch. Dirs. of the City of Milwaukee*, 871 F. Supp. 2d 829, 833 (E.D. Wis. 2012), *aff'd sub nom. Slade v. Bd. of Sch. Dirs. of City of Milwaukee*, 702 F.3d 1027 (7th Cir. 2012); *Tobin v. Washington*, No. C06-5630RJB, 2007 WL 3275073, at *7 (W.D. Wash. Nov. 5, 2007), *aff'd*, 327 F. App'x 747 (9th Cir. 2009).

Fourteenth Amendment's Due Process Clause was meant "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Since *DeShaney*, courts have read into its language the possibility of liability for state-created dangers:

> While the State may have been aware of the dangers that [plaintiff] faced . . . , it played *no part in their creation*, nor did it do anything to render him any more vulnerable to them. . . . [I]t placed him in no worse position than that in which he would have been had it not acted at all.

*Id.* at 201 (emphasis added).

The Agwuokes ask this court to use this case to expressly adopt the state-created danger theory of liability, claiming it "is a natural extension of both the text and purpose of Section 1983 and of Supreme Court precedent. And this is the appropriate case to adopt it." But "this Court has consistently refused to adopt the state-created danger theory." *Dixon v. Alcorn Cnty. Sch. Dist.*, 499 F. App'x 364, 366 & n.2 (5th Cir. 2012) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex. rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010)); *see also Whitley v. Hanna*, 726 F.3d 631, 639 n.5 (5th Cir. 2013).

Contrary to the Agwuokes' assertion, the district court did not hold that the state-created danger doctrine was "not viable" in the Fifth Circuit. Rather, it evaluated the doctrine, noted that the circuit has yet to adopt the theory, and concluded that "the present case would not appear to provide the right vehicle for the Fifth Circuit to adopt the state-created danger doctrine" because "[t]he plaintiffs would fail to satisfy one or more of the necessary elements suggested in *Covington*." We agree.

Even assuming this court recognized the theory of liability, the Agwuokes failed to raise a question of material fact on each element of a

No. 13-20057

§ 1983 claim against HISD premised on the state-created danger theory of liability.

In *Dixon*, this court outlined the elements of a state-created danger claim:

> Specifically, a plaintiff would have to show (1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.

499 F. App'x at 366–67. In addition, the "state-created danger theory is inapposite without a known victim." *Id.* (internal marks omitted) (citing *Covington*, 675 F.3d at 865; *Rios v. City of Del Rio*, 444 F.3d 417, 424 (5th Cir. 2006)).

Even assuming that the district's customs and policies created a dangerous environment that would not otherwise have existed and to which it was deliberately indifferent, it cannot be said that HISD was deliberately indifferent with respect to "a known victim." As the district court held, "[t]he record shows that the plaintiff cannot show a basis to support the inference that HISD knowingly created a risk that C.A. would drown, as opposed to creating a *general risk* for students who could not swim or could not swim well." As we held in *Dixon*, "the state-created danger theory requires a *known victim*, and the fact that a school's policy or procedure presents a risk of harm to students in general is inadequate to satisfy this requirement." 499 F. App'x at 368; *see also Covington*, 675 at 866 ("At most, the Does allege that the school was aware of some general deficiencies in the check-out policy. They do *not* allege that the school knew about an immediate danger to Jane's safety, nor can the court infer such knowledge from the pleadings. Without

11

such allegations, even if we were to embrace the state-created danger theory, the claim would necessarily fail.").

The Agwuokes argue that they "have produced evidence that HISD increased the risk to C.A. *specifically* and that it knew (or but for its willful blindness would have known) that it was doing so" because "HISD *had* specific information from C.A.'s parents that he should not be allowed to participate in any activities in the water." But the dangers of a swimming pool apply to anyone who either cannot swim or cannot swim well, and even assuming the Agwuokes can establish deliberate indifference from a school teacher's failure to account for an athletic participation form submitted three years prior, it cannot be said that the experiment's dangers were unique to C.A.[2]

The Agwuokes fail to establish that C.A. was a known victim, and thus do not make out a prima facie case under the state-created danger theory of liability. As a result, we follow the lead of the en banc court in *Covington* and "decline to use this . . . opportunity to adopt the state-created danger theory

---

[2] Because this circuit has not adopted the state-created danger theory, the contours of the "known victim" requirement are not well developed. In *Rios*, the court stated: "There is no allegation that any alleged action or failure to act on the part of [the officer] was taken by him with the actual purpose or intention of causing injury to *anyone*, much less [the victim]." *Rios*, 444 F.3d at 423. Similarly, here there is no allegation that Castro, Coronado, or the district acted with the intent to injure anyone, much less C.A. In *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 (5th Cir. 1999), this court found state-created danger inapplicable where police officers allowed a drunk truck driver to continue driving and eventually injure someone in a collision. The court stated: "Unlike the deputy in *Ross*, Gonzalez was neither aware of an *immediate danger facing a known victim*, nor did he use his authority to prevent the appellants from receiving aid. This 'state-created danger' theory is inapposite without a known victim." *Id.* at 391–92 (emphasis added). The case the *Saenz* court was distinguishing was *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), where "the Seventh Circuit held that a deputy sheriff committed a constitutional tort by ordering qualified bystanders not to rescue a drowning boy." *Saenz*, 183 F.3d at 391. *Ross*'s facts are clearly distinguishable, and it cannot be said that C.A. was a "known victim" when defendants failed to comply with pool safety regulations or designed their physics experiment.

in this case because the allegations would not support such a theory." 675 F.3d at 865.

## CONCLUSION

We AFFIRM the district court's dismissals of the Agwuokes' claims against the individual defendants and the school district.