**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3875
_____

HEATHER HINTERBERGER

v.

IROQUOIS SCHOOL DISTRICT; SALLY LOFTUS

SALLY LOFTUS,
                                                            Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.:  1-08-cv-00317)
District Judge:  Honorable Sean J. McLaughlin

_____

Argued on November 19, 2013

Before:  RENDELL, JORDAN and LIPEZ*, <u>Circuit Judges</u>

(Opinion filed: December 5, 2013)

_____

*Honorable Kermit V. Lipez, Senior United States Circuit Judge for the Court of Appeals for the First Circuit, sitting by designation.

Richard A. Lanzillo, Esquire  **(ARGUED)**
Knox, McLaughlin, Gornall & Sennett, P.C.
120 West Tenth Street
Erie, PA 16501
                    Counsel for Appellant


Thomas V. Myers, Esquire  **(ARGUED)**
Nichols & Myers
900 State Street
Suite 104
Erie, PA 16501

T. Warren Jones, Esquire
MacDonald, Illig, Jones & Britton, LLP
100 State Street
Suite 700
Erie, PA 16507
                    Counsel for Appellee

---

O P I N I O N

---

**RENDELL**, <u>Circuit Judge</u>:

This suit arises out of a head injury sustained by plaintiff Heather Hinterberger during a

cheerleading practice in March of 2004.  Hinterberger sued both Sally Loftus, the parent-

volunteer coach of the Iroquois High School cheerleading squad, and the Iroquois School

District, under 42 U.S.C. § 1983.  The District Court granted the School District's motion

for summary judgment, and denied Loftus's motion, and Loftus now appeals.  For the

reasons that follow, we reverse the order of the District Court.

I.

At the time of her injury, Hinterberger was a freshman at Iroquois High School ("IHS"), and a member of the school cheerleading squad. Cheerleading practices were often held in the Lawrence Park Elementary School Large Group Instruction ("LGI") room. The room featured high ceilings, but the "floor was described as 'very hard' and likely consisted of concrete covered by industrial grade carpeting with little or no padding." (App. 9.)

On March 3, 2004, Hinterberger was injured during a practice in the LGI while attempting to do a new stunt – the twist down cradle. The twist down cradle involved Hinterberger being thrown into the air by four teammates, known as the "base," doing one full body rotation and then being caught. It is considered an "intermediate stunt," which was frequently used in high school cheering competitions. Though the IHS squad had never performed the stunt prior to this day, they had observed it being performed "by numerous other squads at a cheerleading competition . . . . Following this event, several of the IHS squad members asked Defendant Loftus to allow them to add the move to their own routine." (App. 6.) However, Loftus demurred and did not introduce the stunt for seven months, until the day of Hinterberger's accident, because she "did not feel the squad was ready to add the maneuver to its routine prior to that point." (App. 6.)

Loftus had asked Jessica James, a cheerleader from the McDowell High School squad, to demonstrate the stunt and help instruct the IHS cheerleaders. James had participated in regular and competition cheerleading for McDowell, and worked as an Assistant Coach for a middle school cheerleading squad. James was therefore present for

3

the practice on March 3, 2004, such that she demonstrated the twist down cradle and remained to help instruct.

At the practice, Hinterberger served as the "flyer," the squad member who would be thrown up into the air by the base during the stunt. For safety, six to eight spotters were positioned on the perimeter around Hinterberger's four "base" teammates, in case the base failed to catch her. After performing the stunt successfully at least five times, Hinterberger "flew over and outside the perimeter of her base and her spotters, striking first her left hip, then her left shoulder, then her head on the LGI room floor." (App. 9.) As a result, Hinterberger suffered a "severe closed head injury." (App. 9.) At the time of the accident, there was no matting in place on the LGI room floor.

Hinterberger originally filed a civil action against the School District and Loftus in state court, but that action was removed to the District Court for the Western District of Pennsylvania on November 17, 2008. The District Court found that Hinterberger presented sufficient evidence to satisfy each element of her state-created danger claim. Further, the Court held that because the alleged constitutional right was clearly established as of the time of the accident, Loftus was not entitled to qualified immunity, and Loftus's motion for summary judgment was accordingly denied.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Before us is an interlocutory appeal from a denial of a motion for summary judgment. Our Court has jurisdiction to hear the appeal at this stage because a denial of qualified immunity that turns on an issue of law is treated as a "final decision"

4

within the meaning of 28 U.S.C. § 1291. *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007). "[W]e possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right," but "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 61 (3d Cir. 2002).

Hinterberger claimed that Loftus's conduct constituted a "state-created danger," rendering Loftus liable for a substantive due process violation, under 42 U.S.C. § 1983. Specifically, Hinterberger alleged that Loftus's decision to introduce a new cheerleading stunt without adherence to accepted safety procedures, namely the use of padded mats, constituted an affirmative act of "deliberate indifference" that shocked the conscience, thus violating Hinterberger's substantive due process right of bodily integrity. In response, Loftus urged that she was not "deliberately indifferent." Moreover, she claimed that she was entitled to qualified immunity from suit. The District Court rejected Loftus's arguments.

When a claim of qualified immunity is asserted, a court must determine (1) whether the facts alleged by plaintiff make out a violation of a constitutional right, and (2) whether the right was clearly established at the time of the injury. Courts may, at their discretion, decide in what order to address these inquiries. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because we find the issue of clearly established law to be dispositive, we confine our analysis to that issue.

5

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034 (1987) (alterations in the original)). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). The Supreme Court recently emphasized that, "'[w]e do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton v. Sims*, --- S.Ct. ---, ---, No. 12-1217, 2013 WL 5878007, at *2 (2013) (quoting *al-Kidd*, 131 S. Ct. at 2083). Hinterberger has not met this high threshold.

We first recognized the viability of state-created danger claims in the context of certain extreme police conduct. *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). We later clarified that a state-created danger arises when:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts . . . and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (footnotes and internal quotation marks omitted). Where an official is not under pressure to make hurried judgments, "deliberate indifference" to a serious risk of harm will generally shock the

6

conscience, satisfying prong (2) above. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). However, no published opinion of this Court has found that a state-created danger arises when coaches fail to take certain precautions in athletic practice or in any analogous situation. Indeed, the closest we have come to addressing this scenario was in *rejecting* an Eighth Amendment claim of "deliberate indifference" against staff members of a juvenile detention facility, for allowing residents to play tackle football without protective equipment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010).

However, in finding that Hinterberger's constitutional right was clearly established as of the date of her injury in 2004, the District Court relied upon district court decisions which found state-created danger in a school setting. For instance, in *Maxwell ex rel. Maxwell v. Sch. Dist. of City of Philadelphia*, 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999), the court held that a state-created danger claim had been properly alleged where a teacher knowingly allowed the rape of a female student by male students in a classroom, and where school officials had locked the classroom door, "cutting the vulnerable students off from assistance." Further, in *Susavage v. Bucks Cnty. Sch. Intermediate Unit No. 22*, 2002 WL 109615, at \*15 (E.D. Pa. Jan. 22, 2002), the court held that a jury could find deliberate indifference where a disabled student died from strangulation due to the allegedly improper use of a safety harness on the school bus. We conclude that these cases are significantly dissimilar from the case at bar and would not have informed a reasonable person in Loftus's position that the failure to take certain precautions in a high school cheerleading practice would amount to a constitutional violation.

7

The only case cited below which concerned an athletic setting, prior to the date of Hinterberger's accident, is *Sciotto v. Marple Newtown School District*, 81 F. Supp. 2d 559 (E.D. Pa. 1999). In that case, the court found viable a state-created danger claim where a high school student was rendered quadriplegic due to wrestling an older and heavier college student during a school wrestling practice, in violation of the By–Laws of the Pennsylvania Interscholastic Athletic Association ("PIAA"), which governs high school athletics in the state.[1] *Id.* at 565.

"District court opinions may be relevant to the determination of when a right was clearly established for qualified immunity analysis." *Doe v. Delie*, 257 F.3d 309, 321 (3d Cir. 2001). However, "we have held district court decisions do not establish the law of the circuit, and are not even binding on other district courts within the district." *Id.* at 321 n.10.; *see also Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987) (finding that a "district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's decisions persuasive, they remain free to disagree."). In any event, and reserving comment as to the decision's correctness, we conclude that *Sciotto* alone did not place Loftus on notice that her actions amounted to a constitutional violation.

Cases from other courts of appeals also do not support Hinterberger's claim that her alleged constitutional right was clearly established as of March 2004. *See, e.g.*,

---

[1] At the time of Hinterberger's accident, the PIAA did not officially recognize cheerleading as a sport and accordingly did not issue rules pertaining to cheerleading.

8

*Priester v. Lowndes Cnty.*, 354 F.3d 414, 422 (5th Cir. 2004) (noting that Fifth Circuit

had not adopted a theory of state-created danger, and otherwise found no liability for

injury sustained to student during football practice); *Lillard v. Shelby Cnty. Bd. of Educ.*,

76 F.3d 716, 726 (6th Cir. 1996) (holding that a single slap, inappropriate touching and

suggestive comments by a teacher/coach did not constitute a substantive due process

violation).  Indeed, Hinterberger does not cite, and we have not found, any precedential

circuit court decisions finding a state-created danger in the context of a school athletic

practice.[2]

We thus conclude that Hinterberger's alleged right was not clearly established at

the time of her accident.  It was not "beyond debate" as of March 2004 that Loftus's

---

[2] We note that cases decided in this circuit after Hinterberger's accident have not been models of clarity as to whether a state-created danger claim can be successfully maintained in the context of school sports. *Compare Hillard v. Lampeter-Strasburg Sch. Dist.*, 2004 WL 1091050 (E.D. Pa. May 13, 2004) (finding state-created danger where P.E. teacher instructed class to tape a student to a wall), *and Alt v. Shirey*, 2012 WL 726579 (W.D. Pa. Feb. 7, 2012) (holding state-created danger sufficiently pled where coaches sent student into football game immediately after sustaining a head injury), *with Yatsko v. Berezwick*, 2008 WL 2444503 (M.D. Pa. June 13, 2008) (finding no state-created danger where coaches encouraged student to play in basketball game after experiencing a head injury), *and Leonard v. Owen J. Roberts Sch. Dist.*, 2009 WL 603160 (E.D. Pa. Mar. 5, 2009) (stating that there was no state-created danger based on failure to prevent student from being impaled by a javelin), *and Lavella v. Stockhausen*, 2013 WL 1838387 (W.D. Pa. May 1, 2013) (holding no state-created danger where cheerleader was struck in the head by a flyer during practice, and had previously suffered concussions).  The differing outcomes in these cases further undermines Hinterberger's contention that Loftus should reasonably have understood her actions in March 2004 to violate a constitutional right. *See also Estate of C.A. v. Castro*, 2013 WL 6155819, at *4 (5th Cir. Nov. 25, 2013) (finding that science activity in a swimming pool, resulting in a student's death, was not a violation of clearly established law as "no case has found a violation under similar facts.")

decision to introduce a new cheerleading stunt following a delay of several months, through the instruction of an experienced cheerleader, with the use of multiple spotters, but without any matting, violated Hinterberger's substantive due process rights. *See Stanton*, 2013 WL 5878007, at *2. We fully recognize the tragic nature of Hinterberger's injury and the fact that more might have been done to prevent it. But we are admonished that the "due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). As Hinterberger's alleged right was not clearly established at the time of her injury, Loftus is entitled to qualified immunity from suit.

III.

We accordingly reverse the decision of the District Court.